IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **Juan Doe** | : | |
| | : | |
| Plaintiff | : | |
| | : | **Civil Action** |
| vs. | : | |
| | : | |
| **Delaware State University Board of Trustees,** | : | Case 1:20-CV-01559-MN |
| | : | |
| **and** | : | |
| | : | |
| **Candy Young, in her individual capacity,** | : | |
| | : | Jury Trial Demanded |
| | : | |
| Defendants | : | |

**Reply Memorandum of Law in Support of Request for Injunctive Relief.**

    Equity gives this Court complete discretion to issue a prohibitory or mandatory injunction that returns Juan Doe to the status quo ante, meaning to a time before he suffered any irreparable harm. If this Court restores Juan to the status quo ante, it is Title IX, Title VI, and Delaware contract law that impose affirmative obligations on Delaware State University to act--not this Court's injunction. Those obligations compel DSU to rescind its tainted proceedings, then to hold a hearing that does not discriminate against Juan Doe, to not suppress evidence of his innocence, and to not selectively enforce DSU policy given Juan Doe accused Jane Roe of assaulting him practically from day one (See the last entry on Comp. Ex. 4, and Comp. Ex. 2). DSU would then hold a live hearing with the cross-examination *Doe v. University of the Sciences*, No. 19-2966 (3rd cir. 2020) requires. During cross, Jane Roe will not be able to explain why she complained, given her text to Juan, asking for his forgiveness for what she did to him (Comp. Ex. 4). Thus,

Juan Doe will emerge with a clean name and the ability to restore his reputation. Only then will Juan Doe be safe to return to DSU.

This injunction cures Juan Doe from the irreparable damage DSU has left him with: Disciplined, made physically unsafe, and trapped under a false record that identifies him as a sexual predator for the rest of his life. Juan Doe now suffers additional, present, irreparable harm that is particularly likely to happen upon his return to DSU unless this injunction issues and he clears his name. Finally, because DSU selectively enforced its policy against Juan and in Jane's favor, Juan Doe has already succeeded in stating and proving that discriminatory animus caused the Title IX and contract breach.

**1. Juan Doe asks that the Court restore the parties to the status quo ante, that is, the time before Juan Doe contested Jane Roe's accusation on November 15, 2019.**

The Court has complete discretion to determine the proper date that returns Juan Doe to his status quo ante. Juan Doe suggests that this date is November 15, 2019 because the plain definition of "status quo ante" is "The situation that existed before something else (being discussed) occurred." Black's Law Dictionary, 7th Ed, 2000. Prior to November 15, 2019 there were no uncontested facts and 24 hours later Juan Doe contested those facts as he notified DSU in a conversation with Candy Young that Jane Roe had assaulted him and not the other way around. (See the last entry on Comp. Ex. 4). This is part of what Ms. Young suppressed which powerfully suggests anti-male bias motivated her selective enforcement of DSU policy.

Thus, Juan Doe does not seek an affirmative act, like for example ordering DSU to exempt him from the disciplinary process DSU cannot run fairly, but rather a reset to the status quo ante to "preserve the relative positions of the parties," *Univ. of Tex. v.*

*Camenisch*, 451 U.S. 390, 395 (1981), to then go through the disciplinary process with fairness. In proceedings challenging a university's determination on a student conduct matter such as this one, status quo "has been interpreted to refer to the last uncontested set of facts preceding the pending controversy." *Garsham v. Pennsylvania State University*, 395 F.Supp. 912, 920 (M.D.Pa. 1975). Thus, restoring the status quo requires a finding of November 15, 2019 as the moment when no facts had been contested. On that date Juan Doe had not yet notified DSU that Jane Roe assaulted him, and thus the relative position of all parties was one of fairness as it pre-dated Juan's experience of discrimination.

In contrast, DSU's claim that Juan altered the status quo ante fails on two grounds, first it ignores the meaning of "status quo ante," and second it fails because any alleged delay stems from Juan Doe's good faith effort to resolve his complaints with DSU informally, and before the Department of Education, before resorting to this filing. (Ex. 1, Nos. 7-10). Juan Doe tried to settle this matter as early as May 26, 2020, yet DSU fails to disclose to the Court those efforts, which consumed the time which DSU now seeks to blame Juan Doe for, characterizing him as someone who wasted time.

**2. With the status quo ante set for November 15, 2019, Juan Doe is entitled to either a prohibitory or a mandatory injunction against DSU.**

Setting the status quo ante as of November 15, 2019, allows the Court to grant this injunction as prohibitory for it requires no affirmative act from DSU. It is the laws that regulate the relationship between Juan Doe and DSU, and not this injunction, that trigger DSU's obligation at Jane's choice to hold the hearing of Jane Doe's complaint without discriminating against Juan Doe because he is a heterosexual Latino male.

While both prohibitory and mandatory injunctions share the same elements, Juan Doe has a lighter burden of persuasion for a prohibitive injunction, as he must only "show a greater than fifty percent probability of success . . . ." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34-35 (2d Cir. 2010).  On this record Juan easily meets that burden for all elements including irreparable harm, as discussed below and in his motion.  Juan Doe is entitled to a prohibitory injunction because through it, this Court merely tells DSU to follow the applicable laws, much like it would tell, say a stream polluter, to stop polluting Delaware's water and follow OSHA.

In contrast, DSU urges the Court to set the date for status quo ante at a legally mistaken time DSU strategically picked.  Legally, this date is a mistake, as it ignores the meaning of status quo ante.  Juan Doe first disputed facts that took place November 15-16, 2019.  Thus, DSU's suggestion does not restore Juan Doe's status quo ante. DSU's suggested yet flawed date, as the Court knows, makes sense only for DSU as it triggers mandatory injunction analysis which places higher persuasive burdens on Juan Doe.

Even under mandatory analysis, Juan Doe wins at this earliest stage of the litigation, on this record, including the new evidence of credible attacks on his personal safety, discussed below.  This record provides Juan with the likelihood of success required for mandatory relief. "For our Court, a sufficient degree of success for a strong showing exists if there is "a reasonable chance, or probability, of winning." *Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 229 (3d Cir.2011) (en banc)*. Thus, while it "is not enough that the chance of success on the merits be `better than negligible,'" *Nken*, 556 U.S. at 434, 129 S.Ct. 1749 (citation omitted), the likelihood of winning on appeal need not be "more likely than not," *Singer Mgmt. Consultants*, 650

F.3d at 229; see also *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc*., 559 F.2d 841, 844 (D.C.Cir.1977) (noting that the trouble with a "strict `probability' requirement is [] it leads to an exaggeratedly refined analysis of the merits at an early stage in the litigation")." *In re Revel AC, Inc.*, 802 F.3d 558, 568-69 (3d Cir. 2015).

As the Court can see, DSU's argument elides the meaning of restoring the status quo ante—relief that restores the parties back to a time before the harm claimed—with a series of immaterial subsequent events that stem from DSU's discriminatory conduct, to increase Juan's burden. Yet, under both types of injunction analysis, DSU has failed to state a viable objection against the relief Juan Doe seeks through the Court's equity on this record: to return him to the day before he was first irreparably harmed.

**3.     Juan Doe did not delay this matter and the cases that DSU cites to prop up any delay to oppose the injunction have little weight after Doe v. USciences.**

Juan Doe spent months trying to get DSU to do the right thing, follow Department of Education guidance on Title IX and solve this discrimination experience, amicably. This effort was fruitless; but it was not delay. (Ex. 1, Nos. 7-10). Delay is immaterial here. What matters is the irreparable harm that Juan Doe's record shows. "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision in the merits can be rendered." *Doe v. Rensselaer Polytechnic Institute*, No. 1:18-cv-1374 (FJS/CFH) 2019 WL 181280 at *2 (N.D.N.Y., Jan 11, 2019).

In addition, DSU's reliance on *Marsh v. Del. State Univ., No. 05-00087-JJF (D. Del. Jan. 19, 2006),* to suggest that delay prevents an injunction, fails not only because *Marsh* pre-dates *USciences*' evolution of respondent's rights under Title IX (all of which

DSU violated in Juan's case), but, dispositively, because *Marsh* is not about anti-male bias in sexual misconduct, but rather about Mr. Marsh's drug possession as a basis for academic discipline.  Similarly, DSU's reliance on *Knoch v. Univ. of Pittsburgh, No. 2:16-cv-00970-DRE (W.D.Pa, Aug. 31, 2016)* also fails because it pre-dates USciences, and because DSU takes it out of context. The *Knoch* court found that movant delay matters little, what matters is irreparable harm: "While his delay is not determinative, as Plaintiff has failed to otherwise show irreparable harm, his delay in seeking preliminary injunctive relief tends to negate the immediacy of his alleged irreparable harm." (Id. at 9).

**4.     This injunction protects Juan Doe from his newest irreparable harm:  public threats that he is Jane Doe's "rapist", and thus he should be "castrated" at DSU.**

Juan Doe has recently received credible threats on his life if he returns to DSU in the form of hatred from an enraged public supporting Jane Roe's petition ▮▮▮▮. And Jane Roe must have known she would kindle this fire when she called for DSU to expel "her rapist" and for DSU to fire defendant Young.  (Ex. 2).  Jane's petition has ▮▮▮▮ including several stating credibly violent threats against Juan Doe.  Worse, as Juan Doe states, he knows several of the people signing, which makes it clear that they meant to hurl these threats at him. (Ex.1, No. 21).  These threats include calls for him to be raped and to be "castrated". (Ex 1, No. 23).  As a result, Juan Doe believes that absent this injunction, and the truth it will catalyze, his personal safety and his life are at risk once he sets foot back on DSU's campus.  (Ex.1, Nos. 34-30).  Yet DSU's entire argument ignores this physical risk and baldy states that Juan Doe has no past, present, or future irreparable harm. Not so. DSU, well aware of ▮ ▮▮▮▮, fails to tell the Court about the strong likelihood that Juan Doe will

6

be beaten or worse upon his return to DSU as Jane's supporters promise (Ex. 1, No. 23). That likelihood constitutes the newest form of Juan Doe's future irreparable harm.

An attack on Juan Doe at DSU is more apt to occur than not. Thus, this and the rest of Juan Doe's harm as stated in his pleadings, constitutes irreparability for injunctive relief which must "demonstrate that irreparable injury is likely [not merely possible] in the absence of [a] [stay]." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (emphasis in text). While a reference to "likelihood" of success on the merits has been interpreted by courts to cover the generic range of outcomes, for irreparable harm we understand the Supreme Court's use of "likely" to mean more apt to occur than not. See generally *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 788 (7th Cir.2011) (holding that for harm to be likely "there must be more than a mere possibility that harm will come to pass ... but the alleged harm need not be occurring or be certain before a court may grant relief")." *Revel*, id at 569.

The injunction protects Juan Doe both from the past and the ongoing irreparable harm DSU caused and continues to cause him because it allows for the truth to come out:

**First**, the injunction publicly reasserts Juan Doe's presumption of innocence.

**Second**, the injunction leads DSU to hold a procedurally fair hearing.

**Third**, the likelihood that this hearing will vindicate Juan is high.

**Fourth**, once vindicated, Juan will regain his personal safety and win this case.

Even DSU must agree that there is no amount of money that can protect Juan Doe from the angry mob that Jane Roe has presently mobilized against him. Similarly, DSU cannot argue that a final judgment would address this clear and present danger. On this record it is the case that it is irreparable harm for Juan Doe to return to DSU to face a mob who

wrongly believes him a rapist because of DSU's flawed process; which turns Juan Doe's experience of DSU into a sexually hostile environment violating his Title IX rights.

5. **Expungement of Juan's flawed record is within this Court's equitable power.**

Returning Juan Doe to the status quo ante inheres that he had a clean disciplinary record at that time and this can only be accomplished with DSU's expungement of the current finding of responsibility. The Court has complete power to so order. *Sealed Appellant v. Sealed Appellee,* 130 F.3d 695, 701 (5th Cir. 1997), *Chastain v. Kelley*, 510 F.2d 1232, 1236 (D.C. Cir. 1975). As with the rest of the injunctive relief that Juan Doe seeks, expungement "should be tailored to the injury suffered" and "should not unnecessarily infringe on competing interests." *Flores-Powell v. Chadbourne*, 677 F.Supp. 2d 455, 476 (D. Mass. 2010). Expunging the inescapably flawed disciplinary notation in Juan Doe's record which says that he assaulted Jane Doe, provides this bespoke remedy. This single expungement is equitable, restores the status quo ante, and protects Juan Doe from the past, present, and the future irreparable harm of this false note.

6. **Juan Doe's claim of selective enforcement in violation of Title IX will succeed.**

DSU selectively enforced its sexual misconduct policy when it did not investigate or adjudicate Juan Doe's complaint against Jane Roe (Comp. No. 34). DSU continued to violate Juan Doe's due process rights denying him the ability to cross-examine Jane Roe; a fundamental event for his defense. (Comp. No. 59). DSU lacks a non-discriminatory reason for that conduct. Even granting that Jane was ███████████████████████ ███████, DSU should then have delayed the hearing to act without bias against Juan. Instead it went ahead with it. Thus, what this record shows DSU doing to Juan Doe is the same type of discriminatory conduct in violation of Title IX that Judge David N. Hurd

8

recently found entitled the movant to injunctive relief: "Similarly, the Court finds that a school's conscious and voluntary choice to afford a plaintiff, over his objection, a lesser standard of due process protections when that school has in place a process which affords greater protections, qualifies as an adverse action. That is precisely what RPI did in this case." *Doe v. Rensselaer Poly. Inst*., 1:20-cv001185-DNH (N.D.N.Y., October 16, 2020 at 13). Here, Juan Doe told DSU that Jane Doe assaulted him, and DSU selectively enforced its policy, which is inescapable evidence of DSU's male bias. Those are not the facts for U Delaware which Judge Jennifer Hall recently found did not violate Title IX. See, *Doe v. University of Delaware*, Case No. 1:19-cv-01963 (D. Del., October 14, 2020).

**7.     Juan Doe's claim of violation of equity in his contract with DSU will succeed.**

Juan Doe has a contract with DSU in addition to the due process rights he has claimed DSU violated. Juan Doe has identified breaches of this contract (See Comp. Nos. 23, 28, 29, 33, 37, 47, 62 and 73) stating DSU's lack of staff training, inadequate notice, failure to provide him with support, failure to take the statement of a single of his witnesses, and failure to cure evidentiary deficiencies as Juan specifically requested; all these breaches are amenable to equitable relief. Thus, in Juan's complaint, the contract claim succeeds as DSU ignored its policy just like the *University of Delaware* (id), did:

> "…But during oral argument, counsel for UD acknowledged that a breach of contract claim could be premised upon a plausible allegation that the university failed to comply with its own Sexual Misconduct Policy. 8 (Tr. 31:22-32:6.) There is such an allegation here: Plaintiff alleges that UD failed to provide him with a copy of Roe's complaint at the initial meeting as required by the policy, and that he was interviewed without having that information…" (Id).

9

Other states have held that students can sue public schools for breach of contract. See, e.g., *Doe v. Northern Michigan University* 2019 U.S. Dist. LEXIS 88717 (W.D. Mich. May 28, 2019), and see *Kashmiri v. Regents of University of California* (2007)156 Cal.App.4th 809 , -- Cal.Rptr.3d --.

The fact that the only Delaware case that both parties found—*Fawra*—finds a contractual relationship exists between Delaware private schools and their students, does not mean that there are no contracts between public Delaware schools and their students. To the contrary, as the Delaware Supreme Court has held:

> "It follows, therefore, that a party contracting with an agency of the State authorized by law to enter into contracts has all the remedies under that contract which any private citizen has against another private citizen, including the right to sue for the breach thereof. Accordingly, the holding below that the counterclaims are barred as a matter of law because of the defense of sovereign immunity must be reversed." *George & Lynch, Inc., v. the State of Delaware*, 197 A.2d 734, 737 (Delaware Supreme, 1964).

Like the *Fawra* court did, other courts have identified which documents create this contract if any exists at all. Most often, Courts find a contract with promises stated in the student handbook and the misconduct policy. In DSU's case Juan Doe claims that DSU breached the promises in those very documents. For example, under Pennsylvania law, a contract exists between a private educational institution and its students, allowing students to sue under breach of contract where the university violates its stated procedural promises. *Doe v. Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799, 810 (E.D. Pa. 2017). In New York, a private university is contractually bound to provide students with promised

10

protections. *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 481 (S.D.N.Y. 2015). Under Massachusetts law, the relationship between a student and a university is based on a contract, the terms of which are contained in the student handbook. *Doe v. W. New Eng. Univ.*, 228 F. Supp. 3d 154, 169 (D. Mass. 2017). Finally, finding no contract, in Virginia, "a [u]niversity's student conduct policies are not binding, enforceable contracts; rather, they are behavior guidelines that may be unilaterally revised by [the university] at any time." *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 587–88 (E.D. Va. 2018).

Further, the Third Circuit's *USciences* decision states that unfairness in the procedure breaches DSU's contract with Juan Doe who in turn claims that DSU violated this fairness doing precisely what USciences forbids: Denying his contractual fairness right to a real, live, and adversarial hearing with the opportunity to cross-examine Jane Roe. (See Comp. Nos. 59, 60). DSU responds claiming that everything was fair because ▇▇▇▇▇▇▇▇▇▇ and Juan did not cross claim—which this record contradicts. Thus, DSU fails to escape *USciences*' holding. Even in Pennsylvania, as its Superior Court has noted in agreement with *George & Lynch* (id) "…the University of Pittsburgh should not expect to use its unique state-related status to avoid any obligation to its students under either due process or contract law." *Gati v. Univ. of Pittsburgh of Com. Sys.*, 91 A.3d 723 (Pa. Super. Ct. 2014) at fn. 12. The same is true for DSU. They did not follow their contract and they treated Juan unfairly when they tried him in Jane Roe's absence.

Juan Doe has presented evidence that DSU breached its contract with him when DSU did not prosecute his claim against Jane, and when DSU did not follow its promised procedure by suppressing evidence and preventing Juan from defending his innocence at

11

the hearing and during the appeal. That conduct as pled constitutes breach of contract with a likelihood of success sufficient to merit the requested injunctive relief.

**WHEREFORE** plaintiff Juan Doe respectfully requests that this Court grant the requested injunctive relief.

Respectfully submitted,

/s/ Jimmy Chong　　　　　　　　　　　　　/s/ Raul Jauregui

| | |
|---|---|
| Jimmy Chong, Esquire | Raul Jauregui, Esquire |
| Chong Law Firm | Jauregui Law Firm |
| 2961 Centerville Road, Suite 350 | 720 Arch Street, PO Box 861 |
| Wilmington, DE 19808 | Philadelphia, PA 19107 |
| (302) 999-9480 | (215) 559-9285 |
| Chong@Chonglawfirm.com | RJ@RaulJauregui.com |
| www.chonglawfirm.com | www.studentmisconduct.com |

Attorneys for Plaintiff

Dated: December 16, 2020.

12

**Proof of Service**

I certify that we caused a true copy of this document to be served via e-mail to defendants' counsel.

Respectfully submitted,

/s/ Jimmy Chong                                   /s/ Raul Jauregui

Jimmy Chong, Esquire                        Raul Jauregui, Esquire
Chong Law Firm                                  Jauregui Law Firm
2961 Centerville Road, Suite 350        720 Arch Street, PO Box 861
Wilmington, DE 19808                        Philadelphia, PA 19107
(302) 999-9480                                    (215) 559-9285
Chong@Chonglawfirm.com              RJ@RaulJauregui.com
www.chonglawfirm.com                    www.studentmisconduct.com


Attorneys for Plaintiff

Dated: December 16, 2020.