**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JUAN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 20-CV-01559-MN |
| v. | ) | |
| | ) | |
| DELAWARE STATE UNIVERSITY | ) | |
| BOARD OF TRUSTEES and | ) | |
| | ) | |
| CANDY YOUNG in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF
<u>IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

OF COUNSEL:

Joshua W.B. Richards
Saul Ewing Arnstein & Lehr LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
(215) 972-7737
joshua.richards@saul.com

Date: March 3, 2021

**SAUL EWING ARNSTEIN & LEHR LLP**

James D. Taylor, Jr. (#4009)
Charles E. Davis (#6402)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
(302) 421-6800
james.taylor@saul.com
chad.davis@saul.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 1

SUMMARY OF THE ARGUMENT ......................................................................................... 2

STATEMENT OF FACTS .......................................................................................................... 3

I.     The Parties. ....................................................................................................................... 3

II.    Relationship between Plaintiff and Roe. .......................................................................... 3

III.   The Investigation of Sexual Assault and Plaintiff's Conclusory Claim of Bias. ................. 5

ARGUMENT ............................................................................................................................... 6

I.     Standard of Review .......................................................................................................... 6

II.    Each of Plaintiff's federal claims should be dismissed. ................................................... 6

     A.    Plaintiff's Section 1981 claim may not be asserted against state actors. ................ 6

     B.    The Section 1983 Equal Protection claim fails because Plaintiff alleges insufficient facts to show purposeful race or gender discrimination. ..................... 7

     C.    Plaintiff fails to state a Title IX claim because he ignores key facts and timing regarding the reports of misconduct and lack well-pled facts to support sex-based discrimination. ..................................................................................................... 9

     D.    Plaintiff's Title VI Count should be dismissed because there are no well-pled facts supporting a plausible inference of purposeful race discrimination. .................... 12

     E.    Young is entitled to dismissal under the doctrine of qualified immunity because her conduct did not violate clearly established constitutional or statutory rights. 13

III.   The Court should decline to exercise supplemental jurisdiction over the state law claims, but in the alternative the state law claims fail as a matter of law. ..................................... 13

     A.    Plaintiff lacks standing to bring a Delaware Deceptive Trade Practices Act claim. ................................................................................................................... 14

     B.    Plaintiff's Complaint fails to state a breach of contract claims because it does not sufficiently identify a specific binding term that was breached. .......................... 14

C.     Plaintiff fails to state a negligent hiring claim because there was no notice of any employees' unsuitability at the time of hiring and the Complaint fails to satisfy the prima facie elements of the claim. ................................................................. 15

D.     Plaintiff fails to state a premises liability claim because the circumstances of the alleged assault were not subject to DSU's control and were not foreseeable. ....... 17

E.     Plaintiff fails to state a negligent infliction of emotional distress claim.............. 18

IV.     Plaintiff has not alleged facts to support liability on the part of the Board of Trustees of Delaware State University. .............................................................................................. 19

CONCLUSION.................................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Accenture Global Services GMBH v. Guidewire Software Inc.*,
  581 F. Supp. 2d 654 (D. Del. 2008).........................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................6

*Bowers v. Univ. of Delaware*,
  2020 WL 7025090 (D. Del. Nov. 30, 2020) ...........................................7

*In re Caremark Int'l Inc. Derivative Litig.*,
  698 A.2d 959 (Del. Ch. 1996)..............................................................19

*DeMoss v. Delaware State Univ.*,
  2017 WL 3912701 (D. Del. Sept. 7, 2017)..............................................8

*DeMoss v. Delaware State Univ.*,
  2018 WL 4955231 (D. Del. Oct. 12, 2018) .................................6, 8, 13

*Doe v. Pennsylvania State Univ.*,
  2018 WL 317934 (M.D. Pa. Jan. 8, 2018)............................................19

*Doe v. Rider Univ.*,
  2018 WL 466225 (D.N.J. Jan. 17, 2018) ..............................................10

*Doe v. St. Joseph's Univ.*,
  2020 WL 6281189 (3d Cir. Oct. 27, 2020)............................................11

*Doe v. The Trustees of the Univ. of Pennsylvania*,
  270 F. Supp. 3d 799 (E.D. Pa. 2017) ....................................................15

*Doe v. Univ. of Delaware*,
  2020 WL 6060476 (D. Del. Oct. 14, 2020) ...........................................11

*Doe v. Univ. of Scis.*,
  961 F.3d 203 (3d Cir. 2020)....................................................................9

*Elliott v Delaware State Univ.*,
  879 F. Supp. 2d 438 (D. Del. 2012)......................................................12

*Facchetti v. Bridgewater Coll.*,
175 F. Supp. 3d 627 (W.D. Va. 2016) ...................................................................18

*Fanean v. Rite Aid Corp. of Delaware*,
984 A.2d 812 (Del. Super. Ct. 2009) ....................................................................16

*Fitzgerald v. Barnstable Sch. Comm.*,
555 U.S. 246 (2009)...............................................................................................11

*Furek v. Univ. of Delaware*,
594 A.2d 506 (Del. 1991) ......................................................................................17

*Gendia v. Drexel Univ.*,
2020 WL 5258315 (E.D. Pa. Sept. 2, 2020) ....................................................10, 11

*George v. Rehiel*,
738 F.3d 562 (3d Cir. 2013)...................................................................................13

*Grand Ventures, Inc. v. Whaley*,
632 A. 2d 63 (Del. 1993) .......................................................................................14

*Haynes v. Clarion Univ. of Pennsylvania*,
2018 WL 11206626 (W.D. Pa. June 27, 2018).........................................................8

*Helfman v. Ne. Univ.*,
485 Mass. 308 (Mass. 2020) ..................................................................................18

*Hernandez v. Baylor Univ.*,
274 F. Supp. 3d 602 (W.D. Tex. 2017)...................................................................18

*Kalick v. Nw. Airlines Corp.*,
372 F. App'x 317 (3d Cir. 2010) ...........................................................................13

*Keel v. Delaware State Univ. Bd. of Trustees*,
2019 WL 494621 (D. Del. Feb. 8, 2019) ...............................................................13

*Knelman v. Middlebury Coll.*,
898 F. Supp. 2d 697 (D. Vt. 2012), *aff'd,* 570 F. App'x 66 (2d Cir. 2014) ...........15

*Livery Coach Sols., L.L.C. v. Music Express/E., Inc.*,
245 F. Supp. 3d 639 (D. Del. 2017).......................................................................14

*Malleus v. George*,
641 F.3d 560 (3d Cir. 2011).....................................................................................7

*Matthews v. Booth*,
2008 WL 2154391 (Del. Super. Ct. May 22, 2008),
*aff'd sub nom. Matthews v. Food Lion, L.L.C.*, 970 A.2d 257 (Del. 2009) ......................16, 17

iv

*Mayer v. Belichick*,
   605 F.3d 223 (3d Cir. 2010)...................................................................3

*McGovern v. City of Phila.*,
   554 F. 3d 114 (3d Cir. 2009)..................................................................6

*Mekuns v. Capella Educ. Co.*,
   2015 WL 7075825 (E.D. Pa. Nov. 13, 2015),
   *aff'd*, 655 F. App'x 149 (3d Cir. 2016).................................................15

*Murrell v. Mount St. Clare Coll.*,
   2001 WL 1678766 (S.D. Iowa Sept. 10, 2001) .....................................18

*Nieves v. All Star Title, Inc.*,
   2010 WL 2977966 (Del. Super. Ct. July 27, 2010) ...............................14

*Pearson v. Callahan*,
   555 U.S. 223 (2009)..............................................................................13

*Rister v. Lamas*,
   2013 WL 786420 (M.D. Pa. Mar. 1, 2013)............................................19

*S.M. v. Delaware Department of Education*,
   2015 WL 1775483 (D. Del. April 16, 2015) ..........................................12

*Saravanan v. Drexel Univ.*,
   2017 WL 4532243 (E.D. Pa. Oct. 10, 2017).............................10, 11, 12

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014)....................................................................3

*Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*,
   422 F.3d 141 (3d Cir. 2005)................................................................7, 8

*Spence v. Cherian*,
   135 A.3d 1282 (Del. Super. Ct. 2016) ..................................................18

*Williams v. Pennsylvania State Univ.*,
   2020 WL 5291985 (M.D. Pa. Sept. 4, 2020) .........................................16

*Winter v. Pennsylvania State Univ.*,
   172 F. Supp. 3d 756 (M.D. Pa. 2016) ...................................................11

*Zazzali v. Hirschler Fleischer, P.C.*,
   482 B.R. 495 (D. Del. 2012)....................................................................6

**Statutes**

28 U.S.C. § 1367(c) ................................................................................................13

6 *Del. C.* § 2531 *et seq.* ...................................................................................2, 14

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .........................................................6

## <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

On November 15, 2019, Plaintiff invited Jane Roe ("Roe") to a party in his dorm at Delaware State University ("DSU"). After Roe consumed alcohol, Plaintiff took her away from the party to "use" his friend's room in that same dorm. Plaintiff and Roe had sex in the room he took her to use. That same night Roe reported to DSU police that the sex was not consensual. DSU Police responded to investigate, and Plaintiff told the police that the sex was consensual. At his Title IX hearing, Plaintiff reiterated that the encounter was consensual. Only *after* he was found responsible did Plaintiff first assert that **he** was the victim of a rape committed by Roe.

Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (the "Preliminary Injunction Motion"), based on only three counts of the Complaint, is pending before the Court. *See* D.I. 7.[1] Although facts developed through that briefing and accompanying affidavits remain instructive, the procedural posture here narrows the record available to the Court. *See* D.I. 17-18. Even on this narrowed record, however, the Complaint's exhibits conclusively undermine Plaintiff's theories of liability. Most importantly, they show Plaintiff dramatically and without explanation changed his position from the encounter being consensual with a good friend to a story where he was groomed, stalked, and assaulted. When stripped of conclusory allegations to its limited well-pled facts, none of the Complaint's counts are plausible.

---

[1]  Plaintiff advanced only his Title IX claims (Counts I and II) and contract claim (Count VI) in his Motion for Preliminary Injunction. *See* D.I. 7.

## SUMMARY OF THE ARGUMENT

1.   The Complaint does not allege well-pled facts that support a plausible inference that any of the Defendants engaged in actual and purposeful discrimination on basis of sex, race, or national origin.  Because each Federal claim asserted requires such actual or purposeful discrimination, the Federal claims should be dismissed.  Moreover, Candy Young is protected by qualified immunity.

2.   The Court should decline to exercise supplemental jurisdiction over the state law claims asserted.  Even if the Court were to exercise supplemental jurisdiction, none of Plaintiff's state law counts state a claim because (1) as a mere consumer, he lacks standing to bring a Delaware Deceptive Trade Practices Act claim; (2) he does not identify a sufficiently specific contract term that was breached; (3) he fails to allege DSU had notice any employee was improper at the time of hiring which defeats his negligent hiring claim; (4) he lacks support for a premises liability claim because the incident was not foreseeable, nor subject to DSU's control; and (5) he has not well-pled a negligent act by the Defendants, which defeats the claim for a negligent infliction of emotional distress.

3.   DSU's Board of Trustees is not a proper defendant and should be dismissed.  There are no well-pled factual allegations putting the Trustees on fair notice of any actions they took individually or collectively that could give rise to liability on the claims asserted in this action.

## STATEMENT OF FACTS[2]

This action arises from Plaintiff's allegation that, after consistently arguing a sexual encounter with a DSU classmate was consensual, the encounter was actually a rape of him by Roe. Plaintiff contends that after reporting this allegation to DSU (after he was found responsible for sexually assaulting Roe), DSU mishandled the response and investigation of his allegations. As highlighted below, critical allegations in the Complaint are not entitled to the presumption of truth because they are expressly contradicted by contemporaneous statements made by Plaintiff that are integral to and attached as exhibits to the Complaint.

### I.    The Parties.

Plaintiff, a heterosexual male "of Latino Race and Mexican national origin" was a full-time student at DSU in the Fall semester of 2019. D.I. 1 at ¶ 3 (hereinafter "Compl. ¶ __," or for its exhibits at D.I. 1-1 through 1-14, "Ex. __"). Defendant Delaware State University Board of Trustees is the general governing body of DSU. Compl. ¶ 4. Defendant Candy Young ("Young") is the Director of DSU's Title IX Office. *Id.* ¶ 5. Non-party Roe is a current DSU student.

### II.    Relationship between Plaintiff and Roe.

Plaintiff's relationship with Roe, a Black female student, started in the Fall of 2019 through interactions at DSU's fitness center and a shared gym class. *Id.* ¶¶ 14, 17. Plaintiff and Roe would work out together and exchanged Snapchats. Ex. 2 at 5. On November 15, 2019, Plaintiff

---

[2]    These facts are drawn from the well-pled allegations of the Complaint and assumed true solely for purposes of this brief. Each document integral to the complaint, including its exhibits, are relied upon in this fact section. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (explaining the Court can consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents"); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (explaining a "'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (citations omitted).

invited Roe to a party at his dorm. Compl. ¶ 18. Though he now implies Roe got him drunk, he admits that he offered her alcohol such as a drink from "MY FOUR LOKO DRINK." Ex. 9 at 1. Roe allegedly drank from her "own bottle." *Id.* After Roe allegedly made advances towards Plaintiff, he got a key card from a friend and told Roe "we can use my friend's room." Ex. 2 at 6.

Plaintiff "walked" Roe from the party to the his friend's room, keyed the door open, and then he and Roe had sexual intercourse. *Id.* Plaintiff disputes Roe's account of what occurred after the "door closed." *See id.* However, it is undisputed that the police were called to Plaintiff's dorm the night of the incident because Roe reported the sexual encounter was not consensual. Compl. ¶ 20; Ex. 9 at 2. Plaintiff now claims that he was assaulted. Compl. ¶ 18. Contrary to this assertion, he testified at the Title IX proceeding that it was "consensual sex" and that it was a "consensual act." Ex. 9 at 1. Moreover, he spoke with police the night of the incident and was "honest" in admitting he had sex with Roe. Ex. 9 at 2. After the incident, Roe and Plaintiff exchanged snapchat messages, including one from Plaintiff that said "I talked to the lady today. I told her the truth…." Ex. 4 at 3. Plaintiff told DSU's Title IX Coordinator (and repeated at the Title IX hearing) that the intercourse was consensual. *See* Ex. 9. His allegations in this lawsuit, diametrically opposed to those statements, cannot plausibly support his claims here. *See id.*

Plaintiff also asserts that Roe "groomed" him in order to sexually assault him. Compl. ¶ 17. Plaintiff does not allege that any DSU employees knew that Roe allegedly engaged in this "grooming" conduct, nor did he report that conduct prior to November 15, 2019. Likewise, these claims are contrary to his contemporaneous statements at the time of the incident that he and Roe "[h]ad a nice and respectful relationship." Ex. 9 at 1.

**III.    The investigation of sexual assault and Plaintiff's conclusory claim of bias.**

Immediately after Roe reported that Plaintiff sexually assaulted her, DSU began its investigation. Plaintiff was informed of the Title IX complaint against him on November 20, 2019 and met with Young that same day. Compl. ¶ 32; Ex. 6. Plaintiff claims that he told Young in their first meeting that he was the victim of sexual assault (Compl. ¶ 34), and that he told the first hearing panel the same (Compl. ¶ 116), but contemporaneous materials attached to the Complaint show that he consistently stated that the intercourse was consensual. Ex. 4 at 3; Ex. 9. Based on this faulty premise, Plaintiff asserts that Young was "deliberately indifferent" to him. Compl. ¶ 36. Plaintiff also asserts that no investigation was performed into his (much later) claims that Roe assaulted him. But this is contradicted by Plaintiff's own documents. Exhibit 12 to the Complaint shows that Plaintiff's allegations against Roe were made on or around June 6, 2020. Ex. 12; Ex. 2 at 9; Compl. ¶ 88. Exhibit 12 also shows an investigation was performed into Plaintiff's allegations against Roe and determined there was not "sufficient evidence" to conclude that Roe violated the policy, based in large part on the fact the Plaintiff's complaint on "June 6, 2020 is in direct conflict with" his 2019 statements. Ex. 12. As a result, Plaintiff's core and most important factual allegations are *all* refuted by his own pleadings.

Plaintiff alleges he said he was assaulted at his December 6, 2019 hearing, but cites to his own prior statements from that time where he stated *the encounter was consensual.* Compl. ¶ 58 (citing. Ex. 9); *see* Ex. 4 at 3. Because Roe reported she withheld consent and the undisputed fact that Roe was intoxicated, Plaintiff was found responsible and suspended for a year. *See* Ex. 11 at 2. Plaintiff appealed. *Id.* That appeal was denied on December 19, 2019. *Id.*

<u>**ARGUMENT**</u>

## I.  Standard of Review

To survive a Rule 12(b)(6) motion a plaintiff must plead sufficient facts to state a claim to relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is insufficient if it offers only "labels and conclusions" or "a formulaic recitation of elements of a cause of action." *Twombly*, 550 U.S. at 555.  In making this assessment, the Court is not "obligated to accept as true 'bald assertions,' … 'unsupported conclusions and unwarranted inferences,' … or allegations that are 'self-evidently false.'" *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 506–07 (D. Del. 2012) (internal citations omitted).  Many of Plaintiff's allegations are self-evidently false, particularly with respect to the circumstances surrounding Plaintiff's Title IX cross-claim.  Such allegations, together with other conclusory assertions, should not be credited.  *See id.*

## II.  Each of Plaintiff's federal claims should be dismissed.

### A.  Plaintiff's Section 1981 claim may not be asserted against state actors.

There is no private right of action under Section 1981 against the state actors.  *McGovern v. City of Phila.*, 554 F. 3d 114, 121 (3d Cir. 2009) ("Congress, in promulgating § 1983 over a century ago, established that section *as the exclusive remedy for violations of § 1981 by state actors*.") (emphasis added).  "In other words, though § 1981 regulates both public and private action, § 1981 does not provide a remedy for a government actor's violation of its terms." *DeMoss v. Delaware State Univ.*, 2018 WL 4955231, at *4-5 (D. Del. Oct. 12, 2018) (dismissing Section 1981 claim against defendants).  Under *DeMoss*, Count IV's Section 1981 claim must be dismissed.

**B.  The Section 1983 Equal Protection claim fails because Plaintiff alleges insufficient facts to show purposeful race or gender discrimination.**

Plaintiff's Equal Protection claim (Count V) against Young fails to state a claim because it lacks *any* facts to support the conclusion that he was purposefully discriminated against because of his race or gender.[3]  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (court is to review complaint to "strike conclusory allegations" and then "look at the well-pleaded components" that remain).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right."  *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).  Under the Equal Protection Clause no state "shall 'deny to any person within its jurisdiction the equal protection of the laws.'"  *Id.* at 151 (quoting U.S. Const. amend. XIV, § 1).  "This is essentially a direction that all persons similarly situated should be treated alike" and "[i]n order to bring a successful section 1983 claim for the denial of equal protection, plaintiffs must prove the existence of ***purposeful discrimination***."  *Id.* (citations omitted) (emphasis added).  In pleading facts to make this showing of purposeful discrimination, a plaintiff "must demonstrate that they received different treatment from that received by other individuals similarly situated."  *Id.*  (citation omitted).  The Complaint fails to clear this bar.

Plaintiff alleges that he had "consensual" intercourse with an intoxicated person, was found responsible as a result, and only months later changed his story to assert that he was forcibly raped.  From this nucleus of facts Plaintiff claims he suffered race and gender discrimination.  However,

---

[3]     The claim appears to be brought only against Young.  To the extent Plaintiff seeks to impose liability on DSU for a violation of Section 1983, through this Count or a recasting of Count IV's Section 1981 claim, it fails for lack of a proper institutional theory of liability.  *See, e.g.*, *Bowers v. Univ. of Delaware*, 2020 WL 7025090, at *3 (D. Del. Nov. 30, 2020).

there are no facts to suggest any treatment he received was the result of purposeful discrimination, rather than an abject lack of credibility given his abrupt reversal.

This Court's prior ruling in *DeMoss v. Delaware State University* is instructive. *See* 2018 WL 4955231, at *2-4. In *DeMoss* this Court dismissed an Equal Protection claim on two occasions for conclusory allegations of racial discrimination. *See id.*; *see also DeMoss v. Delaware State Univ.*, 2017 WL 3912701, at *3 (D. Del. Sept. 7, 2017). The plaintiff in *DeMoss* was a white employee who lost his position at DSU while other black employees retained their positions. The Court dismissed this white employee's Equal Protection claim for lack of purposeful discrimination explaining "subjective beliefs, unsupported by factual allegations, cannot give rise to an inference of discrimination" even though the plaintiff pled, among other things, that in connection with his termination a discriminatory motive was "supported by the fact that other Caucasian employees were treated similarly as plaintiff, and other African-American employees were treated more favorably" and specific alleged animus against plaintiff by a high-ranking black university official who allegedly called plaintiff a "fat fuck" and an "asshole." *See DeMoss*, 2018 WL 4955231, at *2-4.

The same is true here. Plaintiff has not alleged (and cannot allege) that a complainant of a different race and gender who was similarly situated (i.e. one who so dramatically changed their story after receiving an adverse result) was treated differently. *See Shuman*, 422 F.3d at 151 (framing as the "threshold question" whether alleged comparators "though perhaps treated differently, were in fact similarly situated in the first place"); *Haynes v. Clarion Univ. of Pennsylvania*, 2018 WL 11206626, at *7 (W.D. Pa. June 27, 2018) (rejecting university student's claim for failure to make a "showing that any Defendant treated similarly situated students

differently based on race ***as opposed to the accusations in each individual case***") (emphasis added). As a result, Plaintiff has not stated a claim under § 1983.

### C. Plaintiff fails to state a Title IX claim because he ignores key facts and timing regarding the reports of misconduct and lacks well-pled facts to support sex-based discrimination.

Counts I and II assert "reverse discrimination" and "deliberate indifference" theories under Title IX, respectively. These claims fail because they ignore Plaintiff's dramatic about-face from the encounter being consensual to him being raped and they conflate Plaintiff's June 2020 Title IX complaint with the November 2019 proceedings where he contended the encounter was consensual. Given this, Plaintiff is not similarly situated to Roe or any other individuals he references in the Complaint, and the well-pled facts do not support discrimination on the basis of sex. Counts I and II should be dismissed.

The Third Circuit has recently clarified that there is no need for specific doctrinal theory and that there is one unified standard: is it plausible that the discriminatory treatment alleged was based on sex discrimination? *Doe v. Univ. of Scis.*, 961 F.3d 203, 209 (3d Cir. 2020) (explaining there is no need to "superimpose" doctrinal tests on the Title IX statute and concluding that "to state a claim under Title IX, the alleged facts, if true, must support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex").[4] Because the Complaint does not support a plausible inference that DSU discriminated against him on the basis of sex, Plaintiff's Title IX counts should be dismissed.

Courts have regularly found "that specific allegations of procedurally flawed proceedings coupled with conclusory allegations of gender discrimination are not sufficient to survive a motion

---

[4] Notably, the cross-examination expectation contemplated in *USciences* arose not from any right or expectation under Title IX, but instead from the application of Pennsylvania contract law. *Univ. of Scis.*, 961 F.3d 203. at 214-15.

to dismiss. A plaintiff must also plead facts to support its allegation that gender bias was a motivating factor behind the defendant's actions." *Doe v. Rider Univ.*, 2018 WL 466225, at *9 (D.N.J. Jan. 17, 2018) (collecting cases and dismissing Title IX claim). Thus a mere problematic and non-policy compliant process, without well-pled allegations the flaws in the process were motived by sex discrimination, is insufficient to state a claim under Title IX. *See id.*; *Saravanan v. Drexel Univ.*, 2017 WL 4532243, at *4 (E.D. Pa. Oct. 10, 2017) (explaining in "a Title IX claim, a plaintiff must allege facts he was discriminated against *because of sex*. Recitation of 'conclusory assertions' is insufficient in claiming discrimination on the basis of race or sex against a university"). Stripped of its conclusory allegations (including those rebutted by the Complaint's own exhibits), Plaintiff alleges as *ipse dixit* that because Plaintiff is a male and he was punished, DSU discriminated against him on the basis of sex. *See* Compl. ¶ 103. This is insufficient.[5]

Plaintiff's core allegations are that the investigation and hearing panel did not credit that he was also drinking, did not pursue potential exonerating evidence, and were deliberately indifferent in their failure to pursue an investigation against Roe or requiring that Roe appear for a live cross-examination. *E.g.* Compl. ¶¶ 108-09; 115-16, 119. But these allegations rely on a flawed premise that Plaintiff's allegations were before the panel in Roe's investigation; they were not. Moreover, Roe *was* investigated in response to Plaintiff's allegations of assault. Ex. 12. No allegations in the Complaint support a plausible conclusion that Plaintiff's *sex* rather than his *credibility* resulted in the treatment he received. *Gendia v. Drexel Univ.*, 2020 WL 5258315, at *1-3 (E.D. Pa. Sept. 2, 2020) (dismissing Title IX complaint where, among other things, it lacked

---

[5]     Plaintiff also confusingly injects his Latino background into this sex issue and alleges that a deliberate indifference claim brought by a different female student against DSU for its alleged inadequate discipline of a black male supports his claim that he suffered sex discrimination. *See* Compl. ¶¶ 25, 103.

facts connecting a key "credibility determination by the investigator to his or Roe's gender"); *Doe v. St. Joseph's Univ.*, 2020 WL 6281189, at *2 (3d Cir. Oct. 27, 2020) (affirming rejection of Title IX claim with an alleged "cursory" investigation that did not pursue alternative explanations or theories explaining that "even if these investigatory choices show bias, a jury would have no basis to conclude that this bias was gender motivated").

Plaintiff's theory of a flawed investigation and an incorrect conclusion without pleading gender bias is regularly rejected. "Mere allegations [that] a flawed proceeding led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination" does not state a Title IX claim because a "plaintiff must allege ***particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.***" *Saravanan,* 2017 WL 4532243, at *4 (citations omitted) (emphasis added). Because Plaintiff fails to allege "specific facts to connect those [alleged] wrongs to his male sex" dismissal is appropriate. *Doe v. Univ. of Delaware*, 2020 WL 6060476, at *6 (D. Del. Oct. 14, 2020) (applying *USciences* to find similar allegations, including that a university did not comply with its own policy, were not sufficient for a Title IX claim absent well-pled allegations of actual *sex*-based bias as the reason for the policy violation)*, report and recommendation adopted*, 2020 WL 6343290 (D. Del. Oct. 29, 2020); *Gendia*, 2020 WL 5258315, at *3-6 (applying *USciences* to dismiss Title IX claim for failure to allege sex was the motivating factor). Given these pleading failures, Counts I and II should be dismissed.[6]

---

[6]    Plaintiff does not appear to name Young in Counts I and II. To the extent he claims he does, that is inappropriate. *Winter v. Pennsylvania State Univ.*, 172 F. Supp. 3d 756, 776 (M.D. Pa. 2016) (explaining Title IX does not authorize a cause of action against individuals); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (same).

**D.     Plaintiff's Title VI Count should be dismissed because there are no well-pled facts supporting a plausible inference of purposeful race discrimination.**

Plaintiff's Title VI claim (Count III) fails to state a claim because Plaintiff has not pled facts making it plausible that DSU purposefully discriminated against him on the basis of his race or national origin.  The Complaint alleges that Plaintiff is a Latino student of Mexican origin, attends a HBCU where most of the staff members he has interacted with are Black, that Roe (who is Black) was treated differently, and his belief that a Black male student in a different sexual misconduct case with different facts received a different result.  *See* Compl. ¶¶ 25-26, 53, 124-126.  These are not sufficient facts of purposeful race or national origin discrimination.

"In order to state a claim for race discrimination pursuant to Title VI, Plaintiffs must allege that Defendants ***purposefully*** discriminated ***based on race***."  *S.M. v. Delaware Department of Education*, 2015 WL 1775483 at *6 (D. Del. April 16, 2015) (emphasis in original).  Decisions that have a disparate impact on a person of one race, without an allegation that choices were made with an intent to target that race is not sufficient to state a Title VI claim.  *See id.*  Stated another way, "[a]llegations of different treatment alone are not enough to survive a motion to dismiss. The facts must show 'intentional discrimination.' [A Plaintiff] must allege different treatment *because of* race or national origin to state a Title VI claim."  *Saravanan*, 2017 WL 4532243, at *9 (dismissing Title VI claim for lack of well-pled facts that university's treatment was motivated by race or national origin).  Here, there are only labels and conclusions of purposeful discrimination based on race, not any well-pled facts suggesting any ill-will or purposeful mistreatment of Latino or Mexican students.  Given this pleading failure, dismissal is appropriate.  *See Elliott v Delaware State Univ.*, 879 F. Supp. 2d 438, 440-46 (D. Del. 2012) (rejecting Title VI claims of White student against DSU where there were only conclusory assertions of race discrimination).

**E.** **Young is entitled to dismissal under the doctrine of qualified immunity because her conduct did not violate clearly established constitutional or statutory rights.**

In addition to the above pleading failures, any federal claim against Young should be dismissed on qualified immunity grounds.[7]  Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "Qualified immunity, thus, protects government officials from liability for 'mere mistakes in judgment, whether the mistake is one of fact or one of law.'" *Keel v. Delaware State Univ. Bd. of Trustees*, 2019 WL 494621, at *8 (D. Del. Feb. 8, 2019) (citation omitted).  "Properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) (citation omitted).

Qualified immunity applies as a complete defense because there are no well-pled facts that intentional race or sex based discrimination occurred.  *See DeMoss*, 2018 WL 4955231, at *3-4 (applying qualified immunity).

**III.** **The Court should decline to exercise supplemental jurisdiction over the state law claims, but in the alternative the state law claims fail as a matter of law.**

For the reasons explained above, all of Plaintiff's federal law claims (Counts I-V) fail to state a claim.  Accordingly, under 28 U.S.C. § 1367(c), this Court "may decline to exercise supplemental jurisdiction over a [state law] claim ... if the district court has dismissed all claims over which it has original jurisdiction.  Absent extraordinary circumstances, jurisdiction [over claims based on state law] should be declined where the federal claims are no longer viable." *Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 322 (3d Cir. 2010) (citations omitted).  This Court

---

[7]     As Defendants read the Complaint, only Count V is actually brought against Young.

should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and dismiss them without further analysis. However, even if jurisdiction was exercised, each of these claims also fail as a matter of law for the reasons explained below.

**A. Plaintiff lacks standing to bring a Delaware Deceptive Trade Practices Act claim.**

The Delaware Deceptive Trade Practices Act ("DTPA") claim (Count VII) should be dismissed because Plaintiff lacks standing. Plaintiff's claim is premised on harm as a "consumer of educational services." *See* Compl. ¶¶ 170, 172. However, the DTPA only confers standing upon horizontal competing businesses, not consumers, and requires actual deceptive statements regarding the goods being sold. *See, e.g.*, *Grand Ventures, Inc. v. Whaley*, 632 A. 2d 63, 65, 70 (Del. 1993) (explaining "[T]he DTPA addresses unreasonable or unfair interference with the 'horizontal' relationships between various business interests" and concluding a plaintiff lacked standing where they were merely a purchaser of goods); *Nieves v. All Star Title, Inc.*, 2010 WL 2977966, at *6 (Del. Super. Ct. July 27, 2010) (same); *Livery Coach Sols., L.L.C. v. Music Express/E., Inc.,* 245 F. Supp. 3d 639, 648 (D. Del. 2017) (same).[8] Neither is pled here.

**B. Plaintiff's Complaint fails to state a breach of contract claims because it does not sufficiently identify a specific binding term that was breached.**

For similar reasons to those outlined in DSU's Preliminary Injunction briefing (D.I. 17), the Complaint does not support a breach of contract claim and Count VI should be dismissed.

---

[8]     Moreover, even if Plaintiff had standing (and he does not), Plaintiff has not sufficiently alleged any actionable deceptive trade practice by the Defendants. *See* Compl. ¶ 169 (citing 6 *Del. C.* § 2532(a)(2), (5), (8) and (12), without any well-pled facts regarding how any cited provision might be violated by Defendants' alleged statements). Plaintiff mostly points to aspirational language in the student conduct policy without facts indicating those statements were deceptive. *See, e.g.*, Compl. ¶¶ 171-73. This is insufficient. *See Accenture Global Services GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 668 (D. Del. 2008) (finding statements of belief or opinion insufficient for DTPA claim).

Even if DSU's policies were binding and enforceable contracts,[9] Doe has failed to explain how any specific and identifiable promise was breached. While this issue remains underdeveloped as a matter of Delaware law, other states typically require a plaintiff to identify allegations that "relate to a specific and identifiable promise that the school failed to honor." *See, e.g.*, *Mekuns v. Capella Educ. Co.*, 2015 WL 7075825, at *3 (E.D. Pa. Nov. 13, 2015), *aff'd*, 655 F. App'x 149 (3d Cir. 2016). Plaintiff primarily alleges that DSU failed to comply with its contractual "obligations and duties of fairness" and "equity." *See, e.g.*, Compl. ¶¶ 11, 167. Reliance on this generalized and aspirational language is not sufficient to state a breach of contract claim. *See, e.g.*, *Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 814–15 (E.D. Pa. 2017) (dismissing certain claims in student discipline case for which plaintiff relied on general "fair" hearing terms in the university policy without identifying a "specific provision" that was breached); *Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 709 (D. Vt. 2012) ("Language in a college handbook or other official statement that is merely aspirational in nature, or that articulates a general statement of a school's 'ideals,' 'goals,' or 'mission,' is not enforceable."), *aff'd,* 570 F. App'x 66 (2d Cir. 2014). For these reasons, Count VI should be dismissed.

C. **Plaintiff fails to state a negligent hiring claim because there was no notice of any employees' unsuitability at the time of hiring and the Complaint fails to satisfy the prima facie elements of the claim.**

Plaintiff also asserts a negligent hiring claim against DSU regarding its police force and Young as Title IX coordinator. Compl. ¶¶ 187-88. The premise of this claim is that if DSU had not been negligent in hiring these employees, Roe would have been found responsible and suspended instead of Plaintiff. *Id.* ¶ 193. Because of the flawed factual premises underlying this

---

[9] As discussed in DSU's Preliminary Injunction briefing (D.I. 17), it is unsettled under Delaware law whether a student conduct policy at DSU, a public university, could constitute a binding contract with its students. *See* D.I. 17 at 18-19.

37958830.11 03/03/2021

claim, together with the lack of well-pled allegations that DSU was on notice at the time of hiring that any employee was improper, this claim should be dismissed.

"In order to state a claim for negligent hiring" a complaint must allege that an employer "was on notice of [the employee's] risk of tortious behavior *at the time it hired her*." *Fanean v. Rite Aid Corp. of Delaware*, 984 A.2d 812, 826 (Del. Super. Ct. 2009) (dismissing negligent hiring claim for absence of this critical notice allegation). Crucially, nothing is alleged regarding DSU's notice of any particular employee's risk of tortious behavior at the time of hiring, which is dispositive to the negligent hiring claim. *Id.*

Beyond the insufficient notice, a negligent hiring claim requires well-pled allegations of negligence which are lacking here. Under Delaware law negligent hiring claims are:

> based upon the employer's negligence in failing to exercise due care to protect third parties *from the foreseeable tortious act of an employee*. An employer is liable for negligent hiring or supervision where the employer is [1] negligent in giving improper or ambiguous orders or in failing to make proper regulations, or [2] in the employment of improper persons, thus creating an unreasonable risk of harm to others.

*Matthews v. Booth*, 2008 WL 2154391, at *3 (Del. Super. Ct. May 22, 2008), *aff'd sub nom. Matthews v. Food Lion, L.L.C.*, 970 A.2d 257 (Del. 2009).

These requirements are not met. First, Plaintiff alleges a breach of duty based on DSU's failure to comply with Title IX. *See* Compl. ¶¶ 191, 193. However, Plaintiff's "premise – that a violation of Title IX's standards constitutes a violation of a duty for negligence purposes – is misplaced." *Williams v. Pennsylvania State Univ.*, 2020 WL 5291985, at *9 (M.D. Pa. Sept. 4, 2020) (dismissing negligent hiring and supervision claim against university in connection with Title IX hearing panel). Second, the foreseeability requirement and remaining elements of a negligent hiring claim are not met. There are no allegations suggesting the alleged tortious acts complained of here (essentially an overly-punitive response and generalized suspicion of male

students' complaints) were foreseeable. The only prior circumstance Plaintiff points to in support involves a complaint of **under-punishment** of a male student. *E.g.*, Compl. ¶ 126. Third, there is no allegation that DSU's policies were improper or that DSU employed "improper persons." *See Matthews*, 2008 WL 2154391, at \*3. Each of these failures requires dismissal of Count IX.

D.    **Plaintiff fails to state a premises liability claim because the circumstances of the alleged assault were not subject to DSU's control and were not foreseeable.**

Plaintiff's premises liability claim is based on the theory that while present on DSU's property, Plaintiff suffered a sexual assault perpetrated by Roe. Compl. ¶ 207. As explained above, Plaintiff's allegations against Roe are conclusory and self-evidently false when viewed through Plaintiff's contemporaneous statements. Under Delaware law, a "university is not an insurer of the safety of its students nor a policeman of student morality, nonetheless, it has a duty to regulate and supervise **foreseeable** dangerous activities occurring on its property." *Furek v. Univ. of Delaware,* 594 A.2d 506, 522 (Del. 1991) (emphasis added). This duty is cabined to certain situations: "[b]ecause of the *extensive freedom enjoyed by the modern university student*, the duty of the university to regulate and supervise **should be limited to those instances where it exercises control**." *Id.* (emphasis added).

The premises liability claim fails because Plaintiff fails to adequately plead that Roe's alleged assault was foreseeable to DSU (even assuming, against the great weight of Plaintiff's pleadings, that that is indeed what happened).[10] "A college, or any other kind of landlord, is incapable of foreseeing an acquaintance rape that takes place in the private quarters of a student or

---

[10]    In addition to lack of foreseeability, no allegations in the Complaint suggest that DSU exercised control inside the four corners of the Plaintiff's friend's dorm room that Plaintiff admits he took Roe to "use." Ex. 2 at 6. Plaintiff, exercising his freedom as a DSU student, invited another student (who DSU had no notice was dangerous) to a small party at his dorm building, and then used a friend's key card to take the alleged attacker into another room to "use" it. *Id.* Under the specific circumstances of this alleged assault, there was no room for DSU to exercise "control."

37958830.11 03/03/2021

tenant, unless a specific student or tenant has a past history of such crimes." *Murrell v. Mount St. Clare Coll.*, 2001 WL 1678766, at *4 (S.D. Iowa Sept. 10, 2001); *Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627, 644 (W.D. Va. 2016) (dismissing negligence claim against college because it could not have foreseen sexual assault when plaintiff invited assailant to stay in her room and assailant had no prior history of committing assaults). Just as an apartment owner in a college town would not be held liable for premises liability where a student-tenant voluntarily key carded in a known acquaintance who then commits a sexual assault against the tenant behind a closed-door, neither should DSU be here. *Murrell*, 2001 WL 1678766 at *4; *see also Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 619 (W.D. Tex. 2017) ("Courts across the country have determined … that the general foreseeability of sexual assault on campus is insufficient to warrant negligence liability."); *Helfman v. Ne. Univ.*, 485 Mass. 308, 324 (Mass. 2020) (citing *Hernandez* and concluding even a "recognized relationship between alcohol and sexual assault on campus, however, standing alone, is not sufficient to impose a duty on [the University]").

Under these circumstances, the alleged sexual assault inside Plaintiff's friend's dorm room that he took Roe to "use" was not foreseeable or subject to DSU's control.

> ### E.    Plaintiff fails to state a negligent infliction of emotional distress claim.

Plaintiff fails to plead a claim for negligent infliction of emotional distress and Count VIII should be dismissed. The elements of a claim for negligent infliction of emotional distress ("NIED") are "(1) negligence causing fright to someone; (2) that the plaintiff was within the 'zone of danger'; and (3) that the plaintiff suffered physical harm as a result. An essential element of a NIED claim is negligence, which requires a party to plead that the defendant owed, and subsequently breached, a duty to the plaintiff." *Spence v. Cherian*, 135 A.3d 1282, 1289–90 (Del. Super. Ct. 2016). This claim fails at the outset for lack of any predicate negligence. *Id.*

(dismissing for lack of well-pled predicate claim of negligence). As explained above, there is no well-pled claim of negligence by the Defendants given the pleading failures on the negligent hiring and premises liability claims. Plaintiff cannot support an alternative negligence theory through this Count given the lack of notice of any of Roe's purported dangerous tendencies and the absence of facts suggesting DSU fell short of some unidentified alternative standard of care. Even if the other NIED elements were well-pled, dismissal is appropriate.

## IV. Plaintiff has not alleged facts to support liability on the part of the Board of Trustees of Delaware State University.

Plaintiff names the Delaware State University Board of Trustees as a defendant. Compl. ¶ 4. Other than the conclusory group pleading of "DSU," Plaintiff makes no specific factual allegations against the Board or its members. *See Doe v. Pennsylvania State Univ.*, 2018 WL 317934, at *4 (M.D. Pa. Jan. 8, 2018) (explaining plaintiff did not adequately allege a claim against a university's "Board of Trustees, since his complaint contain[ed] absolutely no factual allegations against [the Board]").[11] Each member of the Board of Trustees, and the Board generally, lacks fair notice of wrongful actions it is apparently alleged to have taken. The lack of well-pled facts against the Board also entitles them to qualified immunity because the facts pled "demonstrate that [they] could not have violated [p]laintiff's constitutional rights because they were not personally involved with the challenged conduct." *Rister v. Lamas*, 2013 WL 786420, at *6 (M.D. Pa. Mar. 1, 2013). The Board and its members should be dismissed from this lawsuit with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion.

---

[11] DSU is a Delaware corporation created by statute. No well-pled facts or theories implicate personal liability for board members of that corporation. *See, e.g., In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 969 (Del. Ch. 1996) (explaining as a general matter "neither corporate boards nor senior officers can be charged with wrongdoing simply for assuming the integrity of employees and the honesty of their dealings on the company's behalf").

**SAUL EWING ARNSTEIN & LEHR LLP**

OF COUNSEL:

Joshua W.B. Richards
Saul Ewing Arnstein & Lehr LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
(215) 972-7737
joshua.richards@saul.com

Date: March 3, 2021

*/s/ James D. Taylor, Jr.*
James D. Taylor, Jr. (#4009)
Charles E. Davis (#6402)
1201 N. Market Street, Suite 2300
Wilmington, DE  19801
(302) 421-6800
james.taylor@saul.com
chad.davis@saul.com

*Counsel for Defendants*