## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **Juan Doe** : | |
| : | |
| Plaintiff : | **Civil Action** |
| : | |
| vs. : | |
| : | 1:20-cv-01559-MN |
| **Delaware State University Board of Trustees,** : | |
| : | |
| **and** : | |
| : | |
| **Candy Young, in her individual capacity,** : | |
| : | Jury Trial Demanded |
| : | |
| Defendants : | |
| : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Jimmy Chong, Esquire                     Raul Jauregui, Esquire
Chong Law Firm                           Jauregui Law Firm
2961 Centerville Road, Suite 350         720 Arch Street, PO Box 861
Wilmington, DE 19808                     Philadelphia, PA 19107
(302) 999-9480                           (215) 559-9285
Chong@Chonglawfirm.com                   RJ@RaulJauregui.com
www.chonglawfirm.com                     www.studentmisconduct.com


Dated:  March 16, 2021                   Attorneys for Plaintiff Juan Doe

## Table of Contents

Table of Authorities

iii

SUMMARY OF THE ARGUMENT AND STATEMENT OF FACTS

1

ARGUMENT

1

1.      Juan Doe's Section 1981 Claim is Against an Individual,
        not Against DSU.

2

2.      Juan Doe's Section 1983 and Title VI Claims
        State "Purposeful" Discrimination.

2

3.      Juan Doe Stated Plausible Claims of
        Reverse and Direct Title IX Discrimination.

5

4.      Defendants can not Escape Liability for Young's Discrimination
        Claiming Immunity as an Excuse Because Juan Doe has
        Due Process Rights at DSU.

9

5.      Juan Doe Withdraws the Delaware Deceptive Practices Claim.

14

6.      Juan Doe has Stated Binding Terms of his Contract
        that DSU Breached.

14

7.      DSU had Notice from this Court of Candy Young's Negligence
        yet kept her Employed and Negligently Supervised as the
        Title IX Administrator.

19

8.      DSU has Control over the Areas Where Jane Roe Harassed
        and Assaulted Juan Doe.

19

9.      DSU's Negligence Inflicted Emotional Distress on Juan Doe.

19

10.     The Board of Trustees of Delaware State is the Proper Defendant.

20

CONCLUSION

20

## Table of Authorities

Cases:

*Activision Blizzard, Inc. v. Hayes*
 --- A.3d ---, 2013 WL 6053804 Del.Supr., 2013. Nov. 15, 2013,
17

*Anderson v. Creighton*
483 U.S. 635 (1987),
13

*Barnes v. Zaccari*
669 F.3d 1295, 1307 (11th Cir. 2012)
10

*Bernard v. E. Stroudsburg Univ.*,
No. 3:09- CV-00525, 2016 U.S. Dist. LEXIS 22573, at *32 (M.D. Pa. 2016)
8

*Bowers v. Univ. of Delaware*,
2020 WL 7025090, at *3 (D. Del. Nov. 30, 2020)
5

*Bray v. L.D. Caulk Dentsply International*
748 A.2d 406 (Del. 2000).
18

*Brown v. J. Kaz, Inc.*,
581 F.3d 175, 181-82 (3d Cir. 2009).
4

*Butler v. Rector & Bd. of Visitors of the College of William & Mary*
121 F.App'x 515, 518-519 (4th Cir. 2005).
10

*Chan v. Cty. of Lancaster*,
Civil No. 10-cv-3424, 2013 WL 2412168, at *17 (E.D. Pa. June 4, 2013).
6

*Cordis Corp. v. Boston Scientific Corp.*
868 F.Supp.2d 342, 2012 WL 2320799 D.Del., 2012. June 19, 2012.
17

*District of Columbia v. Wesby*,
___ U.S. ___, 138 S. Ct. 577, 590-91 (2018).
10

*Dixon v. Ala. State Bd. of Educ.*
294 F.2d 150 (5th Cir. 1961).
11, 13

*Doe v. Amherst College*,
Civ. No. 15-30097, (D. Mass., Feb. 28, 2017)
5

*Doe v. Case W. Reserve Univ.*,
WL 3840418 (N.D. Ohio Sept. 1, 2017)
5

*Doe v. Mercy Catholic Medical Center*,
No. 16-1247, 2017 WL 894455 (3rd Cir, Mar. 7, 2017).
6, 18

*Doe v. University of Delaware*,
C.A. No. 19-1963-MN, Report and Rec. of October 14, 2020, at 11.
7

Doe v. Purdue Univ.
928 F.3d 652, 663 (7th Cir. 2019);
10

*Doe v. Sch. Bd.,*
604 F.3d 1248, 1259 (11th Cir. 2010);
8

*Doe v. The Trustees of the Univ. of Pennsylvania*
270 F. Supp. 3d 799, 813 (E.D. Pa. 2017
17

*Doe v. University of the Sciences*
961 F.3d 203 (3d Cir. 2020).
1, 15, 16, 17, 18

*Doe v. Williams College*,
Civ. No. 16-30184, (D. Mass., Apr. 28, 2017).
6

*Doe v. Willits Unified Sch. Dist.,*
473 F. App'x 775, 775–76 (9th Cir. 2012);
8

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*
702 A.2d 1228, 1232 (Del.1997)
17

*Fawra v. Wilmington University*
C.A. Number: CPU4-10-006047, (New Castle, 2011)
12, 16, 18

*Fellheimer v. Middlebury Coll*.
869 F. Supp. 238, 242 (D. Vi. 1994).
16

Flaim v. Med. College of Ohio
418 F.3d 629, 633 (6th Cir. 2005);
10

*Fuentes v. Perskie*,
32 F.3d 759, 764 (3d Cir. 1994).
4

*Furey v. Temple Univ*.
884 F.Supp.2d 223, 246 (E.D. Pa. 2012),
11

*Gaspar v. Bruton*
513 F.2d 843, 850 (10th Cir. 1975);
10

*Goss v. Lopez*
419 U.S. 565 (1975) at 572-73.
                                                                        4, 12, 13

Gorman v. Univ. of Rhode Island
837 F.2d 7, 12 (1st Cir. 1988)
                                                                        10

*Gross v. FBL Financial Services, Inc*.,
557 U.S. 167, 176 (2009)
                                                                        4

*Harlow v. Fitzgerald*
457 U.S. 800 (1982) at 818
                                                                        13

*Hazen Paper Co. v. Biggins*,
507 U.S. 604, 610 (1993).
                                                                        2

*Holmes v. Securities Investor Protection Corporation*,
503 U.S. 258, 265-268 (1992)
                                                                        4

*Houston v. Easton Area Sch. Dist.,*
355 Fed. App'x 651, 654 (3d Cir. 2009)
                                                                        7

*Jones v. Snead*
431 F.2d 1115, 1117 (8th Cir. 1970);
                                                                        10

*Keel v. DSU,*
2019 WL 494621 (D. Del. Feb. 8, 2019),
                                                                2, 9, 10, 13, 20

*Knelman v. Middlebury Coll*.
898 F. Supp. 2d 697, 709 (D. Vt. 2012).
                                                                        16

*Kollaritsch v. Michigan State Univ. Bd. of Trs*.,
No. 18-1715 (6th Cir.).
                                                                        9

*Los Angeles Dept. of Water and Power v. Manhart*,
435 U.S. 702, 711 (1978).
                                                                        2

*Martin Marietta Materials, Inc. v. Vulcan Materials Co*.
2012 WL 1605146 Del.Ch., 2012, May 04, 2012
                                                                        17

*Matthew v. Laudamiel*
 2012 WL 2580572 Del.Ch., 2012, June 29, 2012,
                                                                        17

*Matthews v. Booth*,
2008 WL 2154391, at *3 (Del. Super. Ct. May 22, 2008),
aff'd sub nom. *Matthews v. Food Lion, L.L.C*., 970 A.2d 257 (Del. 2009).
                                                                        19

*Merrow v. Goldberg*
672 F. Supp. 766, 774 (D. Vi. 1987);
16

Monaco v. Am. Gen. Assurance Co.,
359 F. 3d 296, 305 (3d cir. 2004)
6

*Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).
6

*Pajewski v. Perry*, Del.Supr., 363 A.2d 429, 433 (1976)
14

*Plummer v. Univ. of Houston*
860 F.3d 767, 773 (5th Cir. 2017);
10

*Pryor v. NCAA*,
288 F.3d 548, 569 (3d Cir. 2002)
4

*Reardon v. Allegheny College*
926 A.2d 477, 480 (Pa. Super. Ct. 2007)
17

*Regents of Univ. of Michigan v. Ewing*
474 U.S. 214, 229 (1985)
12

*Reynolds v. Sterling Coll., Inc.*
750 A.2d 1020, 1022 (Vt. 2000)
17

*Rogers v. Delaware State University*
905 A.2d 747 (Del. 2006).
16, 18

*Rubino v. Saddlemire*,
D.Conn. No. 3:05cv1955, 2007 U.S. Dist. LEXIS 14893, at *38 (Mar. 1, 2007)
11

*Ryan v. Weiner*
610 A.2d 1377, 1386 n.7 (Del. Ch. 1992).
18

*Sassano v. CIBC World Mkts. Corp.*
948 A.2d 453, 462 (Del. Ch. 2008).
17

*Startzell v. City of Phila*., 533 F.3d 183, 203 (3d Cir. 2008)
6

*Tuuamalemalo v. Greene,*
946 F.3d 471, 477 (9th Cir. 2019)
10

vi

*Unger v. Nat'l Residents Matching Program*
928 F.2d 1392, 1399 (3d Cir. 1991).

                                                                                    12
*Van Le v. Univ. of Medicine & Dentistry*
379 F.App'x 171, 174 (3d Cir. 2010)
                                                                                    10, 11
*Wallach v. Eaton Corp.*
837 F.3d 356, 368 (3d Cir. 2016)
                                                                                    17
*Winnick v. Manning*
460 F.2d 545, 548 (2d Cir. 1972);
                                                                                    10

Statutes:

Title IX                                                                            5
Section 1981                                                                        2
Section 1983                                                                        2
Title VI                                                                            2
Delaware Code, Title 14, Ch. 40, Public School Employment Relations Act.            18

Treatise:

Restatement (Second) of Contracts.                                                  17

## SUMMARY OF THE ARGUMENT AND STATEMENT OF FACTS

DSU's hypotheses about dismissing Juan Doe's claims fail.  DSU bases them on incorrectly dated events, to raise improper innuendo challenging Juan's credibility.[1]  To be clear, Juan has never changed this story: Jane Roe assaulted him on November 15-16, 2019 (Comp. 35, Ex. 2), then apologized to him for it the next day (Comp. 22, Ex. 4), and asked him to lie to DSU (Comp. 22, 38) which Juan told DSU's Title IX administrator Candy Young that day (Comp. 32 -35, Ex. 2, 6).  It is Young who selectively enforced DSU's Title IX policy in Jane's favor, ignored Juan's complaint, and then suppressed the evidence both of his victimization (Comp. C, 23-54) and his innocence (Comp. 35, 38, 40, Ex. 4).  What information reached the disciplinary hearing supported only the one sided story Young allowed: Jane Roe's fiction against Juan.  And Juan answered that fiction truthfully (Comp. 47, 58).  These facts, and the rest of DSU's conduct as stated in the complaint, violates due process, is sex and race based discrimination, and breaches the contract between DSU and Juan Doe.  The complaint alleges all of that with clear, irrefutable, and often verified facts through witness declarations (Comp. Ex. 2, 3, 13) that make either the protected category or the contractual breach the nexus of this dispute.

In addition the complaint properly holds DSU liable for due process violations as DSU's claim of sovereign immunity fails.  Finally, the complaint properly identifies the

---

[1] Defendants infer skepticism against Juan's claims as a basis to dismiss them throughout their brief.  As the Third Circuit recently observed, as concerns sexual misconduct, those inferences are improper.  "Doe's argument does not "flow from a faulty premise," but from his allegations and the reasonable inferences that can be drawn from them. By indulging its skepticism, the District Court misapplied the familiar standard that governs motions to dismiss under Rule 12(b) (6). To the contrary, the District Court should have viewed the allegations in Doe's complaint in the light most favorable to him and drawn all reasonable inferences from those allegations in his favor. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Umland v. PLANCO Fin. Servs., Inc*., 542 F.3d 59, 64 (3d Cir. 2008)."  *Doe v. University of the Sciences*, 961 F.3d 203 (3d Cir. 2020), FN 3.

1

documents that conform the contract between DSU and Juan Doe, and its breaches, as well as the basis for negligent supervision of Young, premises liability, and distress.

## ARGUMENT

1. **Juan Doe's Section 1981 Claim is Against an Individual, not Against DSU.**

Young is a personal defendant under section 1981 because she, acting as an individual, purposefully discriminated against Juan Doe because of his race. (Comp. 5, 146). This is why Young is sued in her "individual" capacity; to be held liable under Sec. 1981. Defendants' liability from Young's discriminatory conduct under the rest of Juan's claims stems from Young's work as the Title IX officer at DSU, a state actor. (Comp. 6). Thus, the rest of Young's actions make her as an employee, as well as her employer, defendant DSU Board of Trustees, liable under the other constitutional claims which stem from the same acts Young took. But DSU's hypothesis that Young can not be individually liable under Sec. 1981 because DSU is the proper defendant, fails, simply because each statute has its own type of defendant, which Juan properly pled. Stated otherwise, DSU is indeed not liable for the Sec. 1981 claim. Only Young is as a defendant sued in her "individual" capacity.

2. **Juan Doe's Section 1983 and Title VI Claims State "Purposeful" Discrimination.**

DSU's arguments that Juan Doe's complaint should be dismissed because it fails to state purposeful discrimination in violation of Section 1983 and of Title VI fail for the same reason: purpose requires motive, and motive requires "but for" causation. Thus, DSU's "liability depends on whether the protected trait"… "actually motivated the employer's decision" and "had a determinative influence on the outcome" including

when DSU "may have been motivated by the protected trait on an ad hoc, informal basis." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). Clearly, the complaint states that either Juan Doe's race (Comp. 3, 42-45, 137) or gender (Comp. 3, 42-45, 52, 116) motivated the process from start to its ongoing state.

That is why the complaint uses comparators, proving that "but for" Juan Doe being a heterosexual male of Latino race and Mexican national origin, DSU would have treated him as DSU treated Jane Roe, a black female who is still studying at DSU even after she was accused of sexual assault (Comp. 32, 34, 35) and ███████████ ██████  ███████████████ and Ms. Young's termination as discussed in the pending injunction's briefing. Similarly, but for Juan Doe being a Latino, DSU would have treated him just as DSU treated ███████████, a black male who was accused of sexual misconduct. (Comp. 26). Thus, these comparators meet the simple test for determining purposeful discrimination by DSU against Juan Doe; stating in the complaint "whether the evidence shows treatment of a person in a manner which but for that person's sex [or race] would be different" (internal quotations omitted). *Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 711 (1978). Juan Doe has stated well pled facts for the comparator standard this Court sought, but did not find, forcing it to dismiss the Sec. 1983 claim in *Keel v. DSU*, C.A. No. 17-1818 (MN), Mem. Op. of February 8, 2019: "Here, as the Report recognized, Plaintiff "has failed to allege purposeful disparate treatment and discrimination based on gender" and "fails to address how she was arguably treated differently from others similarly situated."

A complaint full of comparator and "but for" averments is how Juan Doe satisfied the "purposeful" prong of his claims for intentional discrimination under Section 1983

and Title VI (as well as Title IX).  To show "but for" intentional causation, Juan Doe

need only allege at this point, with direct or circumstantial evidence, that the illegitimate

motives of his gender or his race operated as one determinative factor in DSU's handling

of this disciplinary process.  They did. "But for" purposefulness requires Juan Doe to

state evidence of race or sex as a motivating factor. *Fuentes v. Perskie*, 32 F.3d 759, 764

(3d Cir. 1994).  Juan Doe's complaint has stated plenty of motive with examples,

including comparators, ███████ and Jane Roe, where "but for" Juan's gender and race

he would not have experienced discrimination in the imposition of DSU's discipline to

him, a male of a different color.  Juan's complaint states additional circumstantial

evidence of race-based discrimination. Not a single person involved in this situation on

behalf of DSU is Latino. (Comp. 3, 42, 43, 45, 71).

   "But for" meaning "purposeful" causality analysis applies to Juan's claims as it

does to statutes that say "because of" and "based on" or "by reason of." *Gross v. FBL

Financial Services, Inc*., 557 U.S. 167, 176 (2009), see also *Holmes v. Securities Investor

Protection Corporation*, 503 U.S. 258, 265-268 (1992).  DSU's hypothesis about Juan's

"abject lack of credibility" (Brief at 8) has nothing to do with purpose and runs against

the law of this Circuit.  *Pryor v. NCAA*, 288 F.3d 548, 569 (3d Cir. 2002) "The standard

for establishing an 'intent to discriminate on the basis of race' is identical in the Title VI

and 1981 contexts."  It is also established that "The substantive elements of a [racial

discrimination] claim under § 1981 are generally identical to the elements of an

employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc*., 581 F.3d 175,

181-82 (3d Cir. 2009).  And the "purposeful" not "credibility" is the requirement for any

of these intentional race or gender based discriminations (torts) which Juan states

4

sufficiently (*Hazen*, *Gross*, *LADWP*, id) with comparator (Comp. 25, 26) and other 'but for' averments (Comp. 30, 36, 42, 50, 55, 58, 59, 62).  This Court requires that for the Sec. 1983 claims in its 2019 *Keel* opinion. (id); purposefulness—not credibility.

Finally, contrary to DSU's assertion (Brief, FN 3), the complaint states discrimination from a number of DSU employees, all of them 'state actors' (Comp. 23, 58, 77, 117, 137) as well as from DSU itself, as the liable institution. (Comp. 4).  Thus the complaint states why there is institutional liability as required under Sec. 1983, "the plaintiff must demonstrate an institutional policy or custom caused the alleged violation." *Bowers v. Univ. of Delaware*, 2020 WL 7025090, at *3 (D. Del. Nov. 30, 2020). Juan states plausible institutional liability averments against DSU. (Comp. 5, 152, 155-157).

3.    **Juan Doe Stated Plausible Claims of Reverse and Direct Title IX Discrimination.**

Juan's Title IX claims survive on the comparator evidence that Juan Doe accused a Jane Roe of sexual assault and Young, a woman, both ignored the complaint and suppressed its evidence.  (Comp. C).  Female complainants facing cross-claims like Roe faced are proper comparators under Title IX because they deal with similar accusations that violate the same policy which is run by the same staff.  In *Doe v. Case W. Reserve Univ.*, WL 3840418 (N.D. Ohio Sept. 1, 2017) the Court found that plaintiff could use his Jane as a comparator because she was not disciplined after mutually consensual sex that did not involve the aggravating factor Juan Doe told DSU:  That Roe assaulted him and then she apologized him (Comp. 22, 34, 38 ).  In *Doe v. Amherst College*, Civ. No. 15-30097, (D. Mass., Feb. 28, 2017) the Court found that Doe could use his Jane as comparator because Amherst treated her better than it treated Doe by encouraging her to

5

complain and by minimizing his cross-complaint, which is better than what Juan Doe states DSU did to his complaint against Roe (Comp. C). In *Doe v. Williams College*, Civ. No. 16-30184, (D. Mass., Apr. 28, 2017) the Court found that Doe could use his Jane as comparator because Williams treated Jane better and Jane victimized Doe, which is the same allegations that Juan Doe notified to DSU against Roe (Comp. 34, 35, Ex. 2).

 Finding that Jane Roe is Juan's comparator also flows from 3ᵈ Circuit case law on identifying comparators under Title VII. It is established law that Title IX is analyzed under settled Title VII principles. *Doe v. Mercy Catholic Medical Center*, No. 16-1247, 2017 WL 894455 (3rd Cir, Mar. 7, 2017). Thus, at DSU, "Persons are similarly situated under the Equal Protection Clause when they are alike `in all relevant aspects.'" *Startzell v. City of Phila*., 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Juan Doe's burden to find similarly situated comparators "does not mean [the comparators] must be identically situated." *Chan v. Cty. of Lancaster*, Civil Action No. 10-cv-3424, 2013 WL 2412168, at *17 (E.D. Pa. June 4, 2013). Yet Juan, Jane Roe, and ▮▮▮▮▮ all faced sexual misconduct discipline from Young while studying at DSU, similarly situating them because Young applied the same Policy. Determining whether comparators are similarly situated "requires a court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner" that DSU argues. *Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004).* "In disciplinary cases or in the context of personnel actions, . . . the relevant factors often include a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating as would distinguish their conduct or the employer's treatment of

them." *Houston v. Easton Area Sch. Dist.*, 355 Fed. App'x 651, 654 (3d Cir. 2009). Juan Doe's complaint avers that as he and Jane Roe report to Young, (Comp. 5), both are subject to DSU policy, (Comp. Ex. 1), both are accused of sexual misconduct by a student, (Comp. 3, 34), and both were enrolled, (Comp. 3, 14). Thus the claim survives.

In contrast, DSU's hypothesis that "these allegations rely on a flawed premise that Plaintiff's allegations were before the panel in Roe's investigation" fails; they were. (Brief at 10) ("…Juan presented the ERP Panel 1 with oral notice that Jane Doe had sexually assaulted him not the other way around." Comp. 58). DSU's second claim, "[m]oreover, Roe was investigated in response to Plaintiff's allegations of assault." also fails. (id). DSU presents a fictional timeline for the time DSU first investigated Jane, which happened well after DSU had found Juan responsible. (Comp. 88). Juan's first discriminatory experience at DSU dates to the moment he first met with Young (Comp. 34, 35), which is when she suppressed his evidence (Comp. 37) and was deliberately indifferent to his charge against Roe (Comp. 36). Since then DSU has done nothing but favor Roe, a woman, over Doe, a man (Comp. 23, 42, 77,). That is the reason why Juan's allegations never reached the panel. (Comp. 47). DSU's much later investigation of Juan's charge is also fraught with bias in favor of Jane, a woman, and against Juan, a man, (Comp. 91-95) including the shocking fact that DSU falsely stated that Juan's witnesses did not cooperate (Comp. Ex. 12). DSU's skepticism on Juan's credibility, thus, fails.

On Title IX as reverse discrimination, this Court has already identified the kind of factual pleading required for plausibility applying a matrix derived from the *USciences* and *Baum* appellate decisions. See, *Doe v. University of Delaware*, C.A. No. 19-1963-MN, Report and Rec. of Oct. 14, 2020, at 11. Juan's complaint states the facts Judge

Hall sought in spades:  DSU favors females over males generally (Comp. 31, Ex. 5) or specifically (Comp. 23) in relation to Juan's investigation (Comp. 47) and suspension (Comp. 65).  DSU officials made statements suggestive of sex bias in his proceedings (Comp. 77).  DSU treats males accused of sexual assault differently than females (Comp. 34, 35, 53, 58).  Juan's male gender is the nexus to DSU's actions that adversely affected him (Comp. 2, 20, 23, 34, 38, 40, 58, 77). Juan told Young that Roe assaulted him (Comp. 32, 34, Ex. 2) and Young ignored and suppressed that notice (Comp. C).  What Juan told the panel focused only on his perception of what Jane Roe had experienced on that night (Comp. 58, Ex. 2) not on his claim that he had experienced her assault (Comp. 35, Ex. 2). That nexus of facts plausibly avers that Juan's gender improperly motivated DSU's discipline.  The Complaint lists 12 instances where DSU violated the then applicable guidance from the Department of Education to Title IX hearings. (Comp. 107, Ex. 14).

On Title IX as deliberate indifference, Juan Doe must show that DSU's decisions to not accept his complaint against Jane Roe as he stated it to Young (Comp. 34, 35) was an official act and clearly unreasonable. See *Doe v. Willits Unified Sch. Dist*., 473 F. App'x 775, 775–76 (9th Cir. 2012); *Doe v. Sch. Bd*., 604 F.3d 1248, 1259 (11th Cir. 2010); *Bernard v. E. Stroudsburg Univ*., No. 3:09- CV-00525, 2016 U.S. Dist. LEXIS 22573, at *32 (M.D. Pa. 2016). Juan's complaint does this averring that Young is the Title IX officer at DSU (Comp. 5) whom he noticed of his victimization experience (Comp. 34, 35) and that Young did nothing about that (Comp. C). Further, this Court has already ruled, in *Keel v. DSU*, 2019 WL 494621 (D. Del. Feb. 8, 2019), a case that involves the same school and its same official, Young, the kind of pleading that is plausible to state deliberate indifference and which Juan's complaint also meets.  DSU

acknowledges that Juan Doe has a right to not be harassed as a DSU student (Comp. Ex. 1 at 1). DSU then failed to implement any of these promises for Juan (Comp. C), provided "little response" and "den[ied] responsibility" for Juan's victimization (Comp. 23-54). Juan noticed Young, the one DSU official in charge of Title IX, that he was a victim (Comp. 5, 34, 35). Young not only failed to protect Juan (Comp. 36, 37), she actually suppressed all evidence of his charge (Comp. 38, 40). These are all well pled facts that exceed those the Court used to allow the deliberate indifference claim in *Keel* to proceed. In addition, Juan satisfies *Kollaritsch v. Michigan State Univ. Bd. of Trs.*, No. 18-1715 (6th Cir.) post-notice Title IX damages under deliberate indifference. DSU's liability for pre-notice damages is currently pending in the Supreme Court.

**4.     Defendants can not Escape Liability for Young's Discrimination Claiming Immunity as an Excuse Because Juan Doe has Due Process Rights at DSU.**

Possibly the most interesting question DSU presents, and one that could well require 3rd Circuit review as it took the most briefing, is whether, as DSU would have it: "Qualified immunity applies as a complete defense because there are no well-pled facts that intentional race or sex based discrimination occurred." (Brief at 13). Or whether, as Juan Doe suggests, the immunity does not apply to DSU or to Young, not only because of the plethora of well pled facts of their violations, but because the Delaware District Court should follow the robust consensus in United States constitutional jurisprudence holding that it is "clearly established" that Juan Doe has a due process right to continue his studies at DSU, a public school. (Comp. 108, 134, 151-158). Thus, defendants have no immunity because they violated Juan's "clearly established" rights, over and over again.

9

This is the question that this Court's grant of DSU's motion to dismiss in *Keel*, left open. (See, *Keel v. DSU*, C.A. No. 17-1818 (MN), Mem. Op. of February 8, 2019).

The clearly established analysis focuses on "settled law"; as a result, Juan's rights at issue may be clearly established by "a robust consensus of cases of persuasive authority." *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019), citing *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 590-91 (2018). And this court ought to find that this robust consensus holds "yes" for the proposition that in the United States all public higher education students have a constitutionally protected property or liberty interest in continuing their studies. Such has been the decades old position from the courts of appeals for the First, Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits.[2] Juan Doe's property or liberty due process interest in his education at DSU also vests under the only Third Circuit case on point which accepted that Juan has constitutionally protected due process rights at DSU as an assumption without debate. See, *Van Le v. Univ. of Medicine & Dentistry*, 379 F.App'x 171, 174 (3d Cir. 2010) stating: "**The Due Process Clause protects students during disciplinary hearings at**

---

[2] See e.g. *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988) ("a student facing expulsion or suspension from a public educational institution is entitled to the protections of due process"); *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017) (students "have a liberty interest in their higher education"); *Flaim v. Med. College of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005) ("the Due Process Clause is implicated by higher education disciplinary decisions"); *Doe v. Purdue Univ.*, 928 F.3d 652, 663 (7th Cir. 2019) (student adequately alleged that school deprived him of a constitutionally protected interest); *Jones v. Snead*, 431 F.2d 1115, 1117 (8th Cir. 1970) ("procedural due process must be afforded a student on the college campus"); *Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975) ("We have no difficulty in concluding" that such a right exists); *Barnes v. Zaccari*, 669 F.3d 1295, 1307 (11th Cir. 2012) ("the decisions of this court and the Supreme Court clearly established" that student had a constitutionally protected interest). Additionally, at least two other Circuits have accepted this as an assumption without debate. *Winnick v. Manning*, 460 F.2d 545, 548 (2d Cir. 1972); *Butler v. Rector & Bd. of Visitors of the College of William & Mary*, 121 F.App'x 515, 518-519 (4th Cir. 2005).

10

**public institutions**." [Emphasis added]. As a result, district courts in the Third Circuit reject any suggestion that the due process rights Juan invokes against his public school do not exist. (Comp. 108, 134). See e.g. *Furey v. Temple Univ.*, 884 F.Supp.2d 223, 246 (E.D. Pa. 2012) ("**There is no dispute that the plaintiff, a student at a state-funded school, is entitled to procedural due process in a disciplinary action against him**."). [Emphasis added]. Thus, Juan's due process rights at DSU are properly at stake as a constitutionally guaranteed violation. And DSU's suggestion that defendants are not liable under immunity fails because they violated Juan's due process.

Juan's complaint states how Young violated his due process rights to liberty and property in the context of his enrolment at DSU (Comp. C). Defendants made it so that Juan's entire disciplinary experience was not meaningful. See, *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150 (5th Cir. 1961). Young ignored Juan's complaint that Jane assaulted him (Comp. 35-36), and then suppressed all evidence of that assault, including Jane's texts to Juan (Comp. 39, Ex. 4). Through these acts defendants violated Juan's right of due process to be enrolled at DSU because the investigation (Comp. 39, 40, 42) and subsequent hearing (Comp. 56) were meaningless as Jane was not there (Comp. 59, 60) and the evidence the panel heard was not substantial (Comp. 61-64), not to mention that Young never even acknowledged Juan's education experience's abuse (Comp. 34). All of that was Young's doing on DSU's behalf. All of that violates the process due to Juan. (Comp. 108, 124). See, *Rubino v. Saddlemire*, D.Conn. No. 3:05cv1955, 2007 U.S. Dist. LEXIS 14893, at *38 (Mar. 1, 2007) ("Since Dixon, courts have routinely required notice and a **meaningful hearing** prior to disciplining students, and require that any decisions be supported by **substantial evidence**.") [Emphasis added]. Juan has stated in detail how

he received no meaningful hearing and how no substantial evidence was ever at play before DSU found him responsible (Comp. 56, 59, 62).  This shows that due process means nothing at DSU and bias against Juan as a male Latino (Comp. 53, 58, 77) tainted the entire conduct.  Immunity does not apply to violations of due process on those bases.

Juan also has a constitutional interest in the rights of continued enrollment that issue from his contract with DSU; which, again, defendants breached.  This constitutional protection is consistent with the Supreme Court's view that the property "interest in continued enrollment… is essentially a state-law contract right." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 229 (1985).  Juan's protected interests in continued enrollment at DSU are created by Delaware contract law. *Goss v. Lopez*, 419 U.S. 565 (1975) at 572-73.  In this Circuit, Juan's contract-based property interests exist "where the contract confers a protected status, such as those 'characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits.'" *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991).  Juan's contract with DSU confers to him just such protected status. (Comp. Ex. 1). In Delaware law as the *Fawra* Court held, the student-university relationship "is a contractual relationship. The University has taken a number of steps to define that contractual relationship – e.g., the Application, the Student Handbook and the Code."  *Fawra v. Wilmington University*, C.A. Number: CPU4-10-006047, (New Castle, 2011) at 10.  Defendants' breaches of those promises constitute violations of Juan's due process and void all immunity.

DSU's hypothesis that qualified immunity gives Young and DSU a free pass because there are no facts pled making her violations of due process plausible should be

12

rejected because the robust state of the law gave Young and DSU, as it gives to any reasonable school administrators in the Title IX field, fair notice that suspending Juan Doe for an ever expanding period without having provided him any meaningful hearing process (Comp. 56, 59, 62) violates the student's constitutional rights. The complaint pled that and invoked Juan's due process (Comp. 108, 124). This standard has been clearly established since *Goss*, and *Dixon,* and as a result of increased attention to this issue by the Department of Education and litigants, including the complaint with this court in *Keel v. DSU* (17-cv-01818) which noticed both the DSU Board and Young, as a personally named defendant, of her failures as DSU's Title IX administrator, as early as December 19, 2017. In spite of that notice Young immediately violated Juan's rights of constitutionally protected due process as noticed in *Keel*: sexual misconduct discipline. This moots all "lack of notice" based personal or institutional immunity defenses.

Inescapably, Young is a DSU employee who carries out executive or administrative functions on Title IX (Comp. 5) on their behalf and she does so poorly and with bias (Comp. 26, 27, 37, 53). Defendants would be protected from personal monetary liability if their actions did not violate "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) at 818. But their actions show they had to have known that students have a process due as this is also what DSU promises students (Comp. Ex. 1 at 1). Thus, acting as a DSU employee, Young violated these rights for Juan's disciplinary experience at DSU. (Comp. 35, 53). In *Anderson v. Creighton*, 483 U.S. 635 (1987), the Supreme Court clarified the *Harlow* standard, holding that "whether an official protected by qualified immunity may be held personally liable for an allegedly

13

unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time this action was taken." 483 U.S. 635.  That is the case here.  Juan's right to due process is clearly established and defendants should have known that.  They ignored that knowledge. Delaware Courts also dislike qualified immunity. See, *Pajewski v. Perry*, Del.Supr., 363 A.2d 429, 433 (1976) (sovereign immunity is reluctantly recognized when asserted to bar claims against agents of the State which, if committed by private citizens, would constitute actionable wrongs.).  Thus, defendants are personally and institutionally liable to Juan Doe because they violated clearly established rules they knew which grant Juan's constitutionally protected due process right to study at DSU.

**5.        Juan Doe Withdraws the Delaware Deceptive Practices Claim.**

Juan Doe does not have standing for his 7th cause of action.  It is withdrawn.

**6.        Juan Doe has Stated Binding Terms of his Contract that DSU Breached.**

As DSU would have it, the DSU handbook and the DSU Title IX policy are a meaningless bunch of documents, "…it is unsettled under Delaware law whether a student conduct policy at DSU, a public university, could constitute a binding contract with its students." (Brief, Fn. 9).  Not so.  They are part of the contract with Juan Doe.

DSU's "Policy and Procedures: Equal Opportunity, Harassment and Nondiscrimination" (Comp. Ex. 1, hereinafter "Policy") is a binding contract that has no ambiguity in its promises:  "This policy applies to behaviors that take pace on the campus" (id at 1), "[DSU] will not discriminate against any employee, applicant for employment, student…" (id at 3), "[h]arassment constitutes a form of discrimination that is prohibited by law. [DSU] will remedy all forms of harassment when reported, whether

or not the harassment rises to the level of creating a hostile environment" (id at 5),
"[g]enerally speaking, [DSU] considers Non-Consensual Sexual Intercourse violations
the most serious and therefore typically imposes the most severe sanctions…" (id at 7),
"[I]t is not an excuse that the individual respondent accused of sexual misconduct was
him or herself intoxicated and, therefore, did not realize the incapacity of the other" (id.
at 9). DSU breached these contractual duties stated on the Policy Young administers
when they did nothing other than ignore a claim and suppress all the evidence Juan gave
to them. (Comp. C). That the Policy states a contractual promise is assumed in the Third
Circuit's *USciences* decision. It makes no difference that USciences is private and DSU
public because DSU promised fairness: "[DSU] affirms its commitment to promote the
goals of **fairness** and equity in all aspects of the educational enterprise." [Emphasis
added]. (Comp. Ex. 1, at 1). "Because the fairness promised in the Student Handbook
and the Policy must "be given effect," see id., we reject USciences's circular argument."
*Doe v. University of the Sciences*, 961 F.3d 203 (3d Cir. 2020).

Inexplicably, DSU ignores this reality and goes as far as equating the Policy's
Title IX contractual obligations to Juan Doe, which exist to comply with that federal
statute with fairness, to "aspirational" language; a term the *Knelman* court used to
describe why Mr. Knelman could not sue Middlebury after Coach Beaney dismissed him
from the hockey team—a non-disciplinary, non-sexual, non-racist event. The *Knelman*
court found that in Vermont "it appears that the College has an obligation to conduct its
hearings in a manner consistent with the terms of the Handbook and that a student has a
cause of action if he or she can prove that the College deviated from the established
procedures" because "[t]he Vermont Supreme Court has recognized that the relationship

between a student and his or her college is "contractual" in nature. *Reynolds v. Sterling Coll., Inc*., 750 A.2d 1020, 1022 (Vt. 2000) (citing *Merrow v. Goldberg*, 672 F. Supp. 766, 774 (D. Vi. 1987); see also *Fellheimer v. Middlebury Coll*., 869 F. Supp. 238, 242 (D. Vi. 1994). "**The terms of the contract are contained in the brochures, course offering bulletins, and other official statements, policies and publications of the institution**", which is precisely what Juan argues is the case in Delaware with DSU's Policy and its other publications (Comp. 161). *Knelman v. Middlebury Coll*., 898 F. Supp. 2d 697, 709 (D. Vt. 2012). [Emphasis added]. That policies expressed in Delaware's schools' publications create contractual duties with students is not just the law—it is the precedent that DSU's own case law has established. "This Court's holding in *Furek* recognized that **security is among the contractual duties a university provides to its students in part because of an express anti-hazing policy**." *Rogers v. Delaware State University*, 905 A.2d 747 (Del. 2006). [Emphasis added]. DSU has both an express Title IX and express disciplinary rules stated in the Policy (Comp. Ex. 1) that create a similar contractual duty with Juan Doe and the rest of the student body under *Rogers* id and *Furek*. These policies are entitled to fairness under *USciences*. That fairness extends to a contract is expressed in those unambiguous documents—the Policy and other DSU publications. (Comp. Ex. 1). The contractual duties stated in the Policy are not "aspirational". They are part of the contract DSU has with Juan. (Comp. 161).

On the specific point of which documents conform the contract between DSU and its students, Juan states the correct position; that DSU's Policy (Comp., 161, Ex. 1) and other DSU publications are part of his contract. (Comp. 161). This follows from Delaware's contract law, beyond *Fawra*, and *Rogers*, holding that contract construction is

up to the understanding of a reasonable third party.[3]  Here, any reasonable third party

would find the Policy is part of the contract between DSU and Juan because it says so:

"This policy applies to behaviors that take pace on the campus" (Comp. Ex. 1, p. 1).

Only Virginia holds that a student handbook and other publications such as

DSU's Policy do not form a contract.[4]  In Virginia, contract law requires absolute

mutuality of integration. If a term that can be altered unilaterally—as DSU can alter the

Policy— the contract is not integrated.  However, Delaware law on integration looks to

the Restatement (Second) of Contracts.  *Wallach v. Eaton Corp*., 837 F.3d 356, 368 (3d

Cir. 2016) ("In sum, we agree with Appellants that the Restatement carries persuasive

---

[3] See, *Cordis Corp. v. Boston Scientific Corp*. 868 F.Supp.2d 342, 2012 WL 2320799
D.Del., 2012. June 19, 2012, where parties have entered into an unambiguous integrated
written contract, the contract's construction should be that which would be understood by
an objective reasonable third party. *Demetree*, 1996 WL 494910, at *4 (citations omitted);
accord *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc*., 702 A.2d 1228, 1232 (Del.1997)
("Contract terms themselves will be controlling when they establish the parties' common
meaning so that a reasonable person in the position of either party would have no
expectations inconsistent with the contract language."). *Matthew v. Laudamiel* 2012 WL
2580572 Del.Ch., 2012, June 29, 2012, Delaware adheres to the "objective" theory of
contracts under which a contract is construed as it would be understood by an objective,
reasonable third-party.  " *Sassano v. CIBC World Mkts. Corp*., 948 A.2d 453, 462 (Del.
Ch. 2008). "When the plain, common, and ordinary meaning of the words lends itself to
only one reasonable interpretation, that interpretation controls the litigation." See also,
*Martin Marietta Materials, Inc. v. Vulcan Materials Co*. 2012 WL 1605146 Del.Ch.,
2012, May 04, 2012, *Activision Blizzard, Inc. v. Hayes* 77 A.3d 271, 2013 WL 6053804
Del.Supr., 2013. Nov. 15, 2013, "if a charter and bylaws are amended as part of the same
transaction, that indicates that they are intended to be complementary."

[4] In agreement with Delaware, Pennsylvania holds that "The contract between an
educational institution and a student includes any "agreement between the parties
concerning disciplinary procedures, contained within a portion of the student
handbook." *Reardon v. Allegheny College*, 926 A.2d 477, 480 (Pa. Super. Ct. 2007)
(citation omitted). We review such an agreement "as we would any other agreement
between two private parties," id. (citing *Murphy v. Duquesne Univ. of the Holy
Ghost*, 565 Pa. 571, 777 A.2d 418, 428 (2001)" Doe *v. The Trustees of the Univ. of
Pennsylvania*, 270 F. Supp. 3d 799, 813 (E.D. Pa. 2017). That is the history of
contractual integration that culminated in the USciences' Third Circuit Panel's focus on
"fairness" a contractual promise that USciences also made in its Policy (Comp. Ex. 1).

force in defining our federal common law, but we also caution that it serves only as a starting point."), see, e.g., *Ryan v. Weiner*, 610 A.2d 1377, 1386 n.7 (Del. Ch. 1992) (adopting the Restatement (Second) of Contracts' views).  Under the Restatement's Sec. 79 students in Delaware private or a public schools have a contract with that school even if the school can alter it so long as the requirement of consideration is met.  The courts in *USciences*, *Furek*, *Rogers*, and *Fawra* recognized this and thus held:  "The University has taken a number of steps to define that contractual relationship – e.g., the Application, the Student Handbook and the Code."  *Fawra,* id.  DSU did just that in its Policy; create a contract with Juan (Comp. 161), to then breach those promises (Comp. D, 161-166).

Alternatively, because Title IX is analyzed under settled Title VII principles, *Doe v. Mercy Catholic Medical Center*, (id), this Court could treat DSU's Policy as a binding contract; much like it would an employee handbook in the at will context that sets forth, as DSU's Policy does, the terms, the conditions, and the duration of the student-DSU relationship. (Comp. Ex. 1, at 1, 6, 7, 23).  Compare:  As a general rule, Delaware courts have stated that an employee manual that does not set forth the terms, conditions, or duration of employment does not create an employment contract. *Bray v. L.D. Caulk Dentsply International*, 748 A.2d 406 (Del. 2000).  On that analytic approach, this court could also see the Policy as a collective bargaining agreement because students at DSU, just as Delaware's unionized employees, cannot be fired at will and have a grievance proceeding in their bargaining agreement, the equivalent of which as stated in the Policy Juan claims DSU breached (Comp. Ex 1, 1, 6, 7, 23).  Delaware recognizes several collective bargaining agreements as contracts.  See, e.g., Delaware Code, Title 14, Ch. 40, Public School Emp't Relations Act.

Under any rationale, the Policy is part of DSU's contract with Juan Doe.

**7.    DSU had Notice from this Court of  Young's Negligence yet kept her**

**Employed and Negligently Supervised as the Title IX Administrator.**

Through *Keel v. DSU* (17-cv-01818) DSU received notice that Young had failed in her job as DSU's Title IX administrator fully 240 days before Young first met Juan Doe on November 20, 2019.  *Keel*'s notices made it foreseeable to DSU that Young would, as she did, fail in her duties to Juan Doe as DSU's Title IX administrator.  (Comp. 23, 25, 36, 53).  Thus, *Keel*'s notice made it foreseeable that Young would, at the very least, require supervision.  And this does not seem to have happened as Juan avers. (Comp. 29, 193). Thus, the complaint states that DSU failed to exercise due care to protect Juan Doe from the foreseeable torts that Young indeed committed upon him. This meets the standard DSU cites for negligent supervision; *Matthews v. Booth*, 2008 WL 2154391, at *3 (Del. Super. Ct. May 22, 2008). Thus, this claim should survive.

**8.    DSU has Control over the Areas Where Jane Roe Assaulted Juan Doe.**

The dispositive difference in Juan Doe's premises liability claim is the level of control that DSU asserted over the area in question:  First, the entry to the dorms is regulated through a DSU issued card (Comp. Ex. 3, p. 8, No. 3, 4, 6), second DSU provides internal security (Comp. 2, 201) and third DSU has control over Jane Roe (Comp. 207).  Those are the elements that the *Furek* court found as creating control. Where there is control, there is a duty of care, and here DSU's argument that it should have been foreseeable that Jane Roe would assault Juan is specious—DSU foresees these assaults in the Policy, as coming from everyone, male and female.  (Comp. Ex. 1).

**9.    DSU's Negligence Inflicted Emotional Distress on Juan Doe.**

DSU's actions are outrageous (Comp. 180, 181) and issue from DSU's negligence on a clearly foreseeable risk; not just sexual assault on its campus (Comp. 200) but also that its enforcement is inept (Comp. 25). And Juan's pain is not just about being the victim of Jane's assault.  Juan's pain also stems from the re-victimization still experiences as DSU failed to improve its Title IX practice leading to Juan Doe's suspension, ████████  ██████████████, and currently to Juan Doe living under cover in fear for his life as is argued in the briefing for the pending injunction.

**10.    The Board of Trustees of Delaware State is the Proper Defendant.**

DSU as a corporation that is a part of the state of Delaware. As such, a sovereign, can only be sued with a caption naming the board that runs it.  If indeed Juan needed to plead facts that establish liability from the Board, that is done. (Comp. 4, 25).  The proper inference in his favor is that the Board of DSU first considered, drafted, and implemented the Policy (Comp. Ex. 1), and then, at some point, must have been aware that they were being sued, in *Keel*, because of DSU's and Young's inept implementation of the same Policy. (Comp. 25, 200).  The Board either did nothing, or should have done something. (Comp. 29). Thus, the inference favors holding the DSU Board, as a judicial fiction operating as a sovereign state actor in Delaware as the properly named defendant.

## CONCLUSION

Juan Doe plausibly states his claims and DSU's motion should be denied.

Respectfully submitted,

/s/ *Jimmy Chong*                                    /s/ *Raul Jauregui*
_____            _____
Jimmy Chong, Esquire                         Raul Jauregui, Esquire

Dated:  March 16, 2021                        Attorneys for Plaintiff Juan Doe

20