## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JUAN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1559-MN-JLH |
| | ) | |
| DELAWARE STATE UNIVERSITY, | ) | |
| DELAWARE STATE UNIVERSITY | ) | |
| BOARD OF TRUSTEES, and CANDY | ) | |
| YOUNG, in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Juan Doe filed this action against Defendants Delaware State University ("DSU"), Delaware State University Board of Trustees ("Board of Trustees"), and Candy Young, in her individual capacity ("Young", collectively "Defendants"). Pending before the Court is Defendants' motion to dismiss. (D.I. 44.) For the reasons announced from the bench on February 4, 2022, I recommend that Defendants' motion be GRANTED-IN-PART and DENIED-IN-PART.

### I.    DISCUSSION

My Report and Recommendation was announced from the bench on February 4, 2022 as follows:

> This is my report and recommendation on the pending motion to dismiss for failure to state a claim in *Juan Doe v. Delaware State University Board of Trustees*.
>
> I will summarize the reasons for my recommendation in a moment. But before I do, I want to be clear that while we will not be issuing a separate written recommendation, we have followed a full process for making the recommendation that I am about to state.

I have carefully considered the parties' briefing on the motion,[1] and I heard oral argument today.[2]  At the oral argument, Plaintiff's counsel made a number of new arguments and referred to a number of cases not previously presented to the Court.  Those arguments and cases were not considered to the extent that they raise issues not presented in the briefing.

For the following reasons, I recommend that Defendants' motion to dismiss be GRANTED-IN-PART and DENIED-IN-PART.

Plaintiff filed his original Complaint on November 20, 2020.[3]  It contained ten counts and named as defendants the Delaware State University Board of Trustees and Candy Young, in her individual capacity.[4]

On November 23, 2020, Plaintiff filed a motion for a temporary restraining order and a preliminary injunction.[5]  Judge Noreika denied that motion on May 21, 2021.[6]  In the meantime, on March 3, 2021, Defendants filed a motion to dismiss Plaintiff's original Complaint for failure to state a claim.[7]  On June 10, 2021, this case, including the pending motion to dismiss, was referred to me.[8]

After reviewing the parties' briefing on the motion to dismiss, it appeared to me that the parties were talking past each other regarding which entities could be appropriately named as defendants for certain of Plaintiff's claims.  I ordered the parties to "meet and confer to discuss (1) Defendants' position that the Delaware State University Board of Trustees is an inappropriate defendant for Plaintiff's claims that DSU violated Title IX and Title

---

[1] (D.I. 25; D.I. 26; D.I. 28; D.I. 43; D.I. 44; D.I. 45.)

[2] (Tr. _.)

[3] (D.I. 1.)

[4] (*Id.*)

[5] (D.I. 6.)

[6] (D.I. 29.)

[7] (D.I. 24.)

[8] (D.I. 30.)

VI and breached its contract with Plaintiff and (2) the parties' respective positions on which entity is appropriately named as a defendant to those claims."[9]

I received a joint letter from the parties on January 11, 2022, reporting that they had come to an agreement that the Board of Trustees was not an appropriate defendant for some of the counts.[10] I held a status teleconference on January 13, 2022 to discuss the most appropriate and efficient way to proceed with the case and the pending motion to dismiss in light of the fact that the Complaint needed to be amended.[11]

On January 14, 2022, Plaintiff filed an Amended Complaint, which, among other things, added Delaware State University as a defendant.[12]  That same day, I dismissed as moot the motion to dismiss the original Complaint.[13]  On January 21, Defendants filed a motion to dismiss the Amended Complaint.[14]  The same day, the parties submitted a stipulation agreeing that they would rely on the briefing on the prior motion to dismiss.[15]

For purposes of analyzing the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) I assume that the following alleged facts are true.

DSU has a policy titled "Policy and Procedures: Equal Opportunity, Harassment and Nondiscrimination" (the "Policy").[16] The Policy is an exhibit to the Amended Complaint.  Among other things, the Policy states that DSU "will not discriminate against any . . . student . . . on the basis of race, . . . sex, . . . ethnicity, national

---

[9] (D.I. 33.)

[10] (D.I. 36.)

[11] (D.I. 37; D.I. 38.)

[12] (D.I. 39 ("Amended Complaint" or "AC").)

[13] (D.I. 41.)

[14] (D.I. 44.)

[15] (D.I. 43.)

[16] (AC ¶ 13; D.I. 39-2 (Ex. 1).)

origin (including ancestry), . . . or any other protected category under applicable local, state or federal law . . . ."[17]

The Policy also prohibits DSU students from engaging in sexual misconduct, including non-consensual sexual intercourse.[18] The Policy defines "non-consensual sexual intercourse" as "any sexual penetration or intercourse (anal, oral or vaginal)[,] however slight[,] with any object[,] by a person upon another person[,] that is without consent and/or by force."[19]   Consent is defined as "knowing, voluntary and clear permission by word or action, to engage in mutually agreed upon sexual activity."[20]

The Policy goes on to say that "[a] person cannot consent if he or she is unable to understand what is happening or is disoriented, helpless, asleep or unconscious for any reason, including due to alcohol or other drugs."[21]   It further states that "[a]n individual who engages in sexual activity when the individual knows, or should know, that the other person is physically or mentally incapacitated" violates the Policy and that "[i]t is not an excuse that the individual respondent accused of sexual misconduct was him or herself intoxicated and, therefore, did not realize the incapacity of the other."[22]

Any individual who believes that the Policy has been violated can initiate a complaint by contacting DSU's "Title IX Coordinator" or filling out a reporting form.[23]   The Policy states that "[t]he Title IX Coordinator will provide written notification of a complaint to any member of the [DSU] community who is accused of an offense of harassment, discrimination or retaliation."[24]

---

[17] (AC, Ex. 1 at 3–4.)

[18] (*Id.* at 7–10.)

[19] (*Id.* at 8.)

[20] (*Id.* at 9.)

[21] (*Id.*)

[22] (*Id.*)

[23] (*Id.* at 15.)

[24] (*Id.* at 18.)

If it is determined that a Policy violation may have occurred, the complaint may be investigated.[25]   The Policy states that "[a]ll investigations will be thorough, reliable and impartial, and will entail interviews with all relevant parties and witnesses, obtaining available evidence and identifying sources of expert information, if necessary."[26]

According to the Policy, the Title IX Coordinator is supposed to meet with the accused individual and explain the findings of the investigation.[27]   If the accused does not admit responsibility for all or part of the allegations, the matter is supposed to proceed to a formal hearing before an Equity Resolution Panel ("ERP").[28]

The Policy states that, at least one week prior to the hearing, the ERP chair will send a letter to the parties containing a description of the alleged violation, the applicable procedures, and a general statement of the potential sanctions.[29]  Two days prior to the hearing, the chair is to send the parties the names of any witnesses that DSU intends to call, all pertinent documentary evidence, and all written findings from the investigators.

At the hearing, both the complainant and the accused have the right to an advisor, but the Policy states that the parties are expected to ask and respond to questions on their own behalf.[30]  The Policy states that the parties are to be given ample opportunity to present facts and arguments in full and question all present witnesses, but formal cross-examination is not used between the parties.[31]

The Policy states that, following the hearing, the ERP will deliberate in a closed session to determine whether the respondent

---

[25] (*Id.* at 16; Tr. 17:20–23.)

[26] (AC, Ex. 1 at 16.)

[27] (*Id.* at 18.)

[28] (*Id.* at 14, 18.)

[29] (*Id.* at 19.)

[30] (*Id.*)

[31] (*Id.* at 20.)

is responsible for the alleged violation.[32]   The ERP reports their findings and recommended sanctions to the Title IX Coordinator, who then informs the accused individual and the complainant of the decision.[33]   A party dissatisfied with the decision can appeal for limited reasons, including on the basis that there is additional material evidence that was unknown or unavailable during the original hearing or investigation.[34]

According to the Amended Complaint, Plaintiff Juan Doe, a Latino male of Mexican origin, was a full-time student at DSU during the Fall 2019 semester.[35]

The night of November 15, 2019, DSU Police arrested Plaintiff in connection with allegations that he committed a sexual assault against a female student earlier that evening.[36]   The Amended Complaint alleges that the police breathalyzer was not working that night so it did not register the fact that Plaintiff was "inebriated."[37]

On November 20, 2019, Plaintiff received an email from Defendant Young, Director of Title IX at DSU, asking Plaintiff to contact her office "concerning an alleged sexual misconduct incident that may have occurred."[38]

Plaintiff met with Young that day.[39]   Young told Plaintiff that a Black female student ("Jane") alleged that Plaintiff had

---

[32] (*Id.* at 22.)

[33] (*Id.*)

[34] (*Id.* at 25.)

[35] (AC ¶¶ 3, 11, 17.)

[36] (*Id.* ¶ 20–21.)

[37] (*Id.*)

[38] (*Id.* ¶¶ 32–33, D.I. 39-7 (Ex. 6).)

[39] (*Id.* ¶ 32.)

sexually assaulted her on the night of November 15.[40] According to the Amended Complaint, Plaintiff told Young that he had not assaulted Jane and that, in fact, Jane "had pursued [Plaintiff], harassed him, gotten him drunk, and pressured him into going to a room alone with her where she proceeded to sexually assault him."[41]

The Amended Complaint alleges that Young investigated Jane's claim that Plaintiff assaulted Jane but failed to investigate Plaintiff's claim that Jane assaulted Plaintiff.

Plaintiff made Young aware of evidence that Jane sent Plaintiff a text message on November 16, hours after the alleged incident, in which Jane suggested that Plaintiff lie to investigators and "tell them that nothing happened."[42] Young did not include that and other evidence favorable to Plaintiff in the investigative file.[43] Plaintiff also identified for Young "eye-witnesses to the events of November 15 and 16, 2019" that would have supported Plaintiff's story but the investigative file contained no statements from his witnesses.[44]

A hearing on Jane's complaint was held on December 6, 2019, before the ERP.[45] The panel consisted of three DSU employees.[46] According to the Amended Complaint, Plaintiff "presented the [ERP] with oral notice that Jane Doe had sexually assaulted him and not the other way around."[47] Plaintiff was unable

---

[40] (*Id.* ¶¶ 32–34.)  To avoid confusion, the complainant (referred to in the Amended Complaint as "Jane Doe") will be referred to as "Jane," and Plaintiff Juan Doe will be referred to as "Plaintiff."

[41] (*Id.* ¶¶ 34–35.)

[42] (*Id.* ¶ 38; D.I. 39-5 (Ex. 4).)

[43] (*Id.* ¶¶ 36–40.)

[44] (*Id.* ¶¶ 47, 50–51.)

[45] (*Id.* ¶ 55.)

[46] (*Id.*)

[47] (*Id.* ¶ 58.)

to cross-examine Jane at the hearing because she was not in attendance.[48]

The ERP found that Plaintiff had engaged in sexual misconduct and suspended him from DSU for one year.[49]  The ERP did not consider Plaintiff's allegations against Jane at that time.[50]  Plaintiff appealed the ERP's decision.[51]  Plaintiff's appeal was denied on December 19, 2019.[52]

Plaintiff's Amended Complaint has nine counts, alleging federal and state law claims. Defendants argue that the Amended Complaint should be dismissed for failure to state a claim.

I'm not going to read into the record the standard that applies to assessing motions to dismiss under Federal Rule 12(b)(6).  I have a standard that I use in my opinions, for example, in *Truinject Corp. v. Nestle Skin Health, S.H.*, 2020 WL 70981, which I incorporate by reference.[53]

---

[48] (*Id.* ¶ 59.)

[49] (*Id.* ¶ 65.)

[50] (*Id.*)

[51] (*Id.* ¶ 68.)

[52] (*Id.* ¶ 77; D.I. 39-12 (Ex. 11).)

[53] *Truinject Corp. v. Nestle Skin Health, S.A.*, No. 19-592-LPS-JLH, 2020 WL 70981, at *7 (D. Del. Jan. 7, 2020).  A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  A possibility of relief is not enough.  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).
In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not.  *Id.* at 679.  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Twombly*, 550 U.S. at 558 (internal marks omitted).

8

**[Title IX and VI Claims (Counts 1–3)]**

Counts 1, 2, and 3 of the Amended Complaint are claims under Title IX and Title VI against DSU.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"[54]

Counts 1 and 2 set forth different theories underlying Plaintiff's claim that DSU violated Title IX, but the Third Circuit has declined to adopt particular doctrinal tests and instead has adopted a straightforward pleading standard for Title IX violations.[55] To state a claim under Title IX in the Third Circuit, the alleged facts must support a plausible inference that the school discriminated against the plaintiff on the basis of sex.[56]

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[57] In order to state a claim for race or national origin discrimination pursuant to Title VI, the alleged facts must support a plausible inference that the school purposely discriminated against the plaintiff on the basis of race.[58]

DSU argues that the Amended Complaint fails to plausibly allege that DSU discriminated against Plaintiff on the basis of his sex or race/national origin. Plaintiff's Answering Brief is hardly a model of clarity, but I agree that Counts 1, 2, and 3 state claims under Title IX and Title VI. The Amended Complaint alleges facts plausibly suggesting that DSU was improperly motivated by sex and/or race/national origin because it investigated Plaintiff for sexual misconduct but chose not to investigate Jane, a female

---

[54] 20 U.S.C. § 1681(a).

[55] *Doe v. Univ. of Scis.*, 961 F.3d 203, 209 (3d Cir. 2020).

[56] *Id.*

[57] 42 U.S.C. § 2000d.

[58] *S.M. v. Del. Dep't of Educ.*, No. 14-1575-LPS, 2015 WL 1775483, at *6 (D. Del. Apr. 16, 2015).

student of a different race/national origin, who also allegedly violated the Policy.

The Policy prohibits non-consensual sexual intercourse. It states that a person cannot consent if he or she is rendered disoriented or helpless from alcohol, and the other person cannot use as an excuse that they were themselves intoxicated. The Amended Complaint alleges, among other things, that Plaintiff told DSU's Title IX Coordinator that Jane sexually assaulted him while he was drunk. It further alleges that DSU's Title IX Coordinator failed to investigate Plaintiff's allegation. It also alleges that Plaintiff provided evidence of text messages favorable to Plaintiff but that the Title IX Coordinator failed to include them in the investigative file. And it alleges that, although Plaintiff identified witnesses to support his version of the events, the investigative file compiled by the Title IX Coordinator did not contain any statements from those witnesses, notwithstanding the Policy's promise that all investigations will entail interviews with all relevant witnesses.

When those and the other alleged facts are taken as true and viewed in the light most favorable to Plaintiff, one plausible explanation is that DSU enforced the Policy against Plaintiff and not against Jane because of sex and/or race/national origin bias.[59]

DSU argues that the Amended Complaint contains nothing more than allegations concerning a procedurally flawed disciplinary proceeding. I agree with DSU that a procedurally flawed investigation alone cannot support a Title IX claim, but the Amended Complaint alleges more than that. It alleges that Plaintiff, a Latino male of Mexican origin, and Jane, a Black female, brought similar allegations of sexual misconduct to DSU but that DSU did

---

[59] *See Univ. of Scis.*, 961 F.3d at 210–11 (reversing district court's dismissal of Title IX claim where male plaintiff alleged that the university (1) "investigated him but chose not to investigate three female students who allegedly violated the [sexual misconduct] Policy" and (2) charged the plaintiff because his accuser was intoxicated when they had sex, but failed to consider whether the accuser should have been charged due to the plaintiff's intoxication); *Schwake v. Arizona Bd. of Regents*, 967 F.3d 940, 951 (9th Cir. 2020); *Abraham v. Thomas Jefferson Univ.*, No. 20-2967, 2021 WL 4132566, at *6 (E.D. Pa. Sept. 10, 2021) (denying motion to dismiss where the male plaintiff alleged, among other things, that the university completely failed to investigate the plaintiff's report against his female colleague, but considered that same colleague's allegations against him); *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 223 (D. Mass. 2017) (finding allegations sufficient to support Title IX claim where college encouraged a female student to file a formal complaint but did not encourage the plaintiff to file a formal complaint or investigate his allegations even though he alleged the same conduct as the female student).

not investigate Plaintiff's complaint, and either did not investigate or did not include in the investigative file evidence favorable to Plaintiff.    That suggests more than a procedurally flawed investigation; it suggests that DSU may have treated similarly situated individuals differently.  Whether Plaintiff will ultimately be able to prove that, I don't know, but he states a claim.

DSU also contends that Plaintiff's factual allegations are not plausible because Plaintiff's story about the events in question has changed.    Having thoroughly reviewed the allegations and documents attached to the Amended Complaint, I can't disagree with DSU that the documents attached as exhibits are not entirely supportive of Plaintiff's allegation that he told the Title IX coordinator and the ERP panel that he was assaulted at the time they were investigating and assessing Jane's complaint of sexual assault. Indeed, one inference that might be drawn from the exhibits is that Plaintiff didn't do that and that his story changed over time.  But it is not the role of the Court at this stage of the proceedings to weigh the evidence and choose between inferences.[60]

If the Amended Complaint contains false allegations of fact, the Court will deal with that in an appropriate way at the appropriate time.  But it is not self-evident from the Amended Complaint and the attached exhibits that Plaintiff's allegations are false.  They are what they are and, viewed in the light most favorable to Plaintiff, the Amended Complaint states claims under Title IX and Title VI.

Accordingly, I recommend that the Court deny the motion to dismiss with respect to Counts 1, 2, and 3.

**[§ 1981 Claim (Count 4)]**

Count 4 is a claim under 42 U.S.C. § 1981 against Defendant DSU and Defendant Young.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every

---

[60] *See Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018) ("At the pleading stage, John's allegations need only create the plausible inference of intentional gender discrimination; although alternative non-discriminatory explanations for the defendants' behavior may exist, that possibility does not bar John's access to discovery.").  The *Roe v. University of Cincinnati* case cited by Defendants is inapposite because that court was ruling on a motion for a preliminary injunction.  No. 18-312, 2018 WL 9944938, at *7 (S.D. Ohio Aug. 21, 2018).

State and Territory to make and enforce contracts."[61]   However, there is no private right of action under § 1981 against a state actor.[62]

Plaintiff agreed during the oral argument today that his § 1981 claim against DSU may be dismissed.  Moreover, Plaintiff's answering brief acknowledges that Defendant Young is a state actor.[63]  Count 4 should therefore be dismissed.

**[§ 1983 (Equal Protection) Claim (Count 5)]**

Count 5 is a claim under 42 U.S.C. § 1983, alleging that Defendant Board of Trustees and Defendant Young violated the Equal Protection Clause by discriminating against Plaintiff on the basis of sex and/or race/national origin.

A plaintiff can plead a violation of § 1983 for a denial of equal protection by plausibly alleging that a person acting under color of state law subjected the plaintiff to different treatment than others similarly situated.[64]

For the same reasons as discussed above with respect to the Title IX and Title VI claims, Plaintiff has plausibly alleged that Young treated him differently than Jane, who was similarly situated, on the basis of sex and race/national origin.

Defendant Young argues that the claim against her in her individual capacity should be dismissed because she has qualified immunity.  At the motion to dismiss stage, a government actor is shielded by qualified immunity if (1) the facts alleged show the actor's conduct did not violate a constitutional right, or (2) the right violated was not clearly established in light of the specific context of the case.[65]  A right is "clearly established" for qualified immunity purposes only if "[t]he contours of the right" are "sufficiently clear

---

[61] 42 U.S.C. § 1981.

[62] *DeMoss v. Del. State Univ.*, No. 16-680-MN, 2018 WL 4955231, at *4–5 (D. Del. Oct. 12, 2018) (citing *Ford v. Se. Pa. Transp. Auth.*, 374 F. App'x 325, 326 (3d Cir. 2010)); *see also McGovern v. City of Philadelphia*, 554 F.3d 114, 120–21 (3d Cir. 2009).

[63] (*See* D.I. 26 at 5.)

[64] *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014).

[65] *Taylor v. Rosa*, 856 F. App'x 376, 378 (3d Cir. 2021).

that a reasonable official would understand that what he is doing violates that right."[66]

Young is correct that it would be improper to define the constitutional right at issue at too high a level of generality. On the other hand, there is no requirement of a prior [court decision] precisely on point. In this case, Plaintiff contends that Young purposely treated him differently than Jane on the basis of Plaintiff's sex and race/national origin. It cannot be seriously disputed that, at the time of Defendant Young's alleged conduct, the law was sufficiently clear that, in the public education context, students have an equal protection right to be free from purposeful discrimination and selective enforcement of school policies based on their sex and race/national origin. Indeed, well prior to the events of this case, the Equal Protection Clause was interpreted to prohibit any purposeful discrimination directed at an individual by state actors solely because of the individual's membership in a protected class.[67]

That is what the Amended Complaint alleges. Only time will tell whether Plaintiff can prove it. Defendant Young is free to reraise her qualified immunity arguments at the summary judgment stage, when the record is further developed. In the meantime, Count 5 should proceed as to Defendant Young.

Count 5 also names the Board of Trustees. Plaintiff agreed during the oral argument today that his § 1983 claim against the Board of Trustees may be dismissed.

**[Contract Claim (Count 6)]**

Count 6 is a breach of contract claim against DSU. It alleges that DSU breached its Policy.

To state a claim for breach of contract under Delaware law, the plaintiff must allege the following: first, the existence of the contract, whether express or implied; second, the breach of an

---

[66] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[67] *See Miami Univ.*, 882 F.3d at 604; *see also Oona R.-S.- by Kate S. v. McCaffrey*, 143 F.3d 473, 476 (9th Cir. 1998) ("[T]he right to be free from intentional gender discrimination by a state actor was clearly established as early as 1988.").

obligation imposed by that contract; and third, the resultant damage to the plaintiff.[68]

DSU's briefing points out [in a footnote] that "it is *unsettled* under Delaware law whether a student conduct policy at DSU, a public university, could constitute a binding contract with its students."[69] [To the extent DSU contends that its student conduct policy cannot as a matter of law constitute a binding contract, that argument] was not squarely raised; regardless, I recommend rejecting it at this stage of the case. As another judge sitting in this district recently acknowledged, "In Delaware, '[t]he relationship between a student and the university he attends is one of contract.'"[70] Moreover, "[T]o find the terms of an education contract, Delaware courts have looked to documents like the school's course catalog or student handbook."[71]

DSU next contends that the Amended Complaint fails to adequately identify a specific term or provision of the contract that is alleged to have been breached. I conclude that the Amended Complaint plausibly alleges that DSU breached the Policy. As one example, the Policy states that DSU will not discriminate against students on the basis of race, sex, or national origin. Plaintiff has plausibly alleged that he was discriminated against on the basis of his race/national origin and sex. Accordingly, Count 6 should proceed against DSU.

**[Negligent Infliction of Emotional Distress Claim (Count 7)]**

Count 7 is a state law negligent infliction of emotional distress claim against DSU.

"There are three elements to the claim of negligent infliction of emotional distress [ ]: (1) negligence causing fright to someone;

---

[68] *Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011); *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

[69] (D.I. 25 at 15, n.9 (emphasis added).)

[70] *Ninivaggi v. Univ. of Del.*, No. 20-1478-SB, 2021 WL 3709765, at *2 (D. Del. Aug. 20, 2021) (quoting *Siebold v. Univ. of Del.*, No. 4399, 1975 WL 4178, at *3 (Del. Ch. Mar. 12, 1975)).

[71] *Id.* (citing *Virgili v. Wesley Coll., Inc.*, No. 711-K, 1981 WL 88268, at *2 (Del. Ch. Mar. 23, 1981)); *Swanson v. Wesley Coll., Inc.*, 402 A.2d 401, 403 (Del. Super. Ct. 1979).

(2) that the plaintiff was within the 'zone of danger'; and (3) that the plaintiff suffered physical harm as a result."[72]

This claim should be dismissed for multiple reasons, not the least of which is that the Amended Complaint fails to plead facts plausibly suggesting that DSU breached a tort duty in a way that caused a fright to Plaintiff. Plaintiff's brief devotes one paragraph to this claim, but Plaintiff cites no case law and does not even attempt to explain how the allegations in the Amended Complaint plausibly suggest that the elements of the claim might be met. Count 7 should be dismissed.

**[Negligent Hiring Claim (Count 8)]**

Count 8 alleges a negligent hiring claim against DSU. Plaintiff says that DSU acted negligently when it hired and retained its police force, its Title IX Coordinator, and the members of the ERP.

An employer may be liable for negligent hiring/retention where it was foreseeable that an employee would engage in tortious behavior. This claim should also be dismissed for multiple reasons. For one thing, the Amended Complaint fails to plausibly allege that any of the alleged wrongful conduct on the part of DSU employees was foreseeable to DSU.

Moreover, the Amended Complaint alleges that the wrongful conduct committed by DSU employees was breach of contract and violation of federal antidiscrimination laws. Plaintiff's claims (if any) that DSU employees breached DSU's contract with Plaintiff lie in contract, not in a tort claim for negligent hiring.[73] Likewise, Plaintiff's claims that DSU employees violated federal anti-discrimination laws do not give rise to a negligent hiring claim.[74] Plaintiff cites no case law suggesting otherwise.

---

[72] *Spence v. Cherian*, 135 A.3d 1282, 1289–90 (Del. Super. Ct. 2016) (quoting *Armstrong v. A.I. duPont Hosp. for Child.,* 60 A.3d 414, 423 (Del. Super. Ct. 2012)).

[73] "As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." *Pinkert v. Olivieri*, No. 99-380-SLR, 2001 WL 641737, at *5 (D. Del. May 24, 2001).

[74] *Williams v. Pa. State Univ.*, No. 20-298, 2020 WL 5291985, at *9 (M.D. Pa. Sept. 4, 2020) (rejecting plaintiff's argument that "a violation of Title IX's standards constitutes a violation of a duty for negligence purposes" and, accordingly, dismissing negligent hiring/training claims).

At oral argument today, Plaintiff suggested for the first time that the underlying tortious conduct committed by the DSU employees was actually their negligent infliction of emotional distress.  Not only is that a new theory not raised in the briefing, that's not what is pleaded in the Amended Complaint.  Regardless I reject that argument for the same reason I reject the negligent infliction of emotional distress claim.

Count 8 should be dismissed.

**[Premises Liability Claim (Count 9)]**

Finally, Count 9 alleges a premises liability claim against DSU.  Plaintiff's claim is based on his allegation that Jane sexually assaulted Plaintiff on DSU's campus.

Under Delaware law, a university may be liable to its students for injuries caused by the criminal acts of third persons if the acts were foreseeable and subject to university control.[75]

But the Amended Complaint does not plausibly suggest that DSU's negligence in maintaining or monitoring its premises or in controlling its students contributed to the alleged assault of Plaintiff.  Nor does the Amended Complaint suggest that DSU had any reason to suspect that Jane in particular would commit a sexual assault.

Plaintiff appears to contend that the mere foreseeability that sexual assaults will occur on a university campus is, without more, enough to give rise to negligence liability.  Plaintiff's briefing cited no case law from Delaware or any other jurisdiction to support that proposition, and I recommend that it be rejected.[76]

At oral argument this morning, Plaintiff cited for the first time the Third Circuit's recent opinion in *Hall v. Millersville University*.[77]  I reviewed that case during the recess.  It is inapposite and doesn't inform the Court's consideration of Plaintiff's state law premises liability claim.

---

[75] *Furek v. Univ. of Del.*, 594 A.2d 506, 521 (Del. 1991).

[76] *See Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 619 (W.D. Tex. 2017) ("Courts across the country have determined . . . that the general foreseeability of sexual assault on campus is insufficient to warrant negligence liability.").

[77] 22 F.4th 397 (3d Cir. 2022)

I recommend that the Court dismiss Count 9.

## II.    CONCLUSION

For the reasons set forth above, I recommend that Defendants' motion to dismiss (D.I. 44) be GRANTED-IN-PART and DENIED-IN-PART as follows:

1.  The motion to dismiss should be DENIED with respect to Counts 1, 2, 3, and 6.  The motion should also be DENIED with respect to Count 5 as to Defendant Young.

2.  The motion to dismiss should be GRANTED with respect to Counts 4, 7, 8, and 9.  The motion should also be GRANTED with respect to Count 5 as to Defendant Board of Trustees. Those claims should be dismissed without prejudice.  I further recommend that Plaintiff be granted leave to amend to address the identified deficiencies within 14 days.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1.  Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages.  Any response shall be filed within fourteen days thereafter and limited to ten pages.  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R.

Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.


Dated: March 2, 2022

_____
The Honorable Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE